691 So.2d 170 (1997)
Ellen F. DAVIS
v.
LOUISIANA STATE BOARD OF NURSING.
No. 96 CA 0805.
Court of Appeal of Louisiana, First Circuit.
February 14, 1997.
Writ Denied April 25, 1997.
*171 Celia R. Cangelosi, Baton Rouge, for Plaintiff-Appellant Ellen F. Davis.
E. Wade Shows and William A. Morvant, Baton Rouge, for Defendant-Appellee Louisiana State Board of Nursing.
Before WATKINS, GONZALES and KUHN, JJ.
WATKINS, Judge.
Plaintiff, Ellen Flood Davis, appeals a trial court judgment affirming a decision of the Louisiana State Board of Nursing (Board), denying Ms. Davis's request to take the National License Examination for Registered Nurses (NCLEX-RN). Ms. Davis appealed alleging the following assignments of error:
1. The trial court erred in failing to find that the nursing board acted arbitrarily, capriciously and committed manifest errors of both fact and law when it found Ellen Davis "guilty of a felony" and concluded that constituted sufficient cause to deny her license application.
2. The trial court erred in failing to find that the nursing board acted arbitrarily, capriciously and committed manifest errors of both fact and law when it found Ellen Davis to be "unfit or incompetent by reason of negligence, habit or other causes" and denied her license application.
3. The trial court erred in failing to find that the nursing board acted arbitrarily, capriciously and committed manifest errors *172 of both fact and law when it denied the license application of Ellen Davis.
On September 10, 1994, Ms. Davis, then a student at Our Lady of the Lake College of Nursing and Allied Health in Baton Rouge, notified the Board of her anticipated graduation date of December 11, 1994. Ms. Davis also advised the Board that she had previously been convicted of a felony and was petitioning the Board for permission to sit for the NCLEX-RN. Ms. Davis's petition to the Board also detailed the facts surrounding her conviction and the procedural history of the case, as well as her incarceration at the Louisiana Correctional Institute for Women for approximately 14 years.
Three evidentiary hearings were held before the Board concerning Ms. Davis's application. On June 22,1995, the Board issued a final order denying approval for Ms. Davis to take the NCLEX-RN. The order provided in pertinent part as follows:

FINDINGS OF FACT
1. That on September 13, 1994, she notified the Board that she currently is a senior student at Our Lady of the Lake College of Nursing and Allied Health ADN program with anticipated graduation in December 1994, and that she was previously convicted of a felony. After graduation, she submitted an Application for Licensure as a Registered Nurse by Examination.
2. That on September 15, 1994, a Show Cause Order was issued by the Board and notice of hearing was sent to the individual.
3. That at the evidentiary hearing on November 2, 1994, documentary evidence and oral testimony were introduced to show that she is guilty of a felony. On August 25, 1972, a Bill of Indictment was filed against her in the 17th Judicial District Court for the Parish of Terrebonne for Murder (L.R.S.14:30), which incident occurred on June 2, 1972. On June 8, 1973, in the 32nd Judicial District Court, Parish of Terrebonne, LA, she was tried and found guilty of Murder and sentenced to life imprisonment in the Louisiana State Penitentiary in St. Gabriel, LA. On December 3, 1987, the Governor of Louisiana granted a commutation of her sentence to 30 years and she was released from prison.
4. That on November 3, 1994, the Board deferred final action on this matter and requested a comprehensive psychiatric and psychological evaluations. [sic]
5. That on February 14, 1995, at a regularly scheduled meeting before the Board, she appeared and presented a copy of a Governor's First Offender Pardon for the felony conviction dated January 5,1995. She presented copies of psychological and psychiatric evaluations from Dr. John F. Bolter, Dr. William B. Daigle, and Dr. F.A. Silva. The evaluations did not demonstrate any overt signs of mental illness but did present profiles of a guarded and extremely defensive individual. After presenting written documentation and oral testimony, the Respondent's attorney requested a continuance until the August hearing.
6. That on May 10, 1995 at the evidentiary hearing, exhibits presented in the prior hearings were reviewed and discussed by Respondent's attorney. Numerous letters were submitted in support of Respondent. Many letters were written years ago to support positive behaviors occurring long before she began her nursing career. Witnesses from her church community and nursing school spoke in support of her application for nursing licensure.
7. That the psychiatric and psychological evaluations dated January 30, 1995, February 9, 1995, March 15, 1995 and May 9, 1995 were introduced into evidence and reviewed by the Board in light of the felonious crime committed and the suitability, judgment, and abilities required for the practice of nursing.

CONCLUSIONS OF LAW
1. That pursuant to L.R.S. 37:911 et seq., the Louisiana State Board of Nursing has jurisdiction over this matter.

*173 2. That based on the foregoing Findings of Fact, Respondent is guilty of a felony, conduct proscribed by L.R.S. 37:921 as set forth in the Show Cause Order filed.
3. Not withstanding the final disposition of the felony charge, the underlying nature of the felony charge is sufficient justification for the Board to consider whether this applicant is unfit or incompetent or unsuitable for licensure as a registered nurse.
4. That the evidence presented constitutes sufficient cause pursuant to L.R.S. 37:921.B: "Is guilty of a felony" to deny the license applied for by Ellen F. Davis to practice as a Registered Nurse in Louisiana.
5. That the evidence presented constitutes sufficient cause pursuant to L.R.S. 37:921.C: "Is unfit or incompetent by reason of negligence, habit or other causes" to deny the license applied for by Ellen F. Davis to practice as a Registered Nurse in Louisiana.
Ms. Davis brought suit under LSA-R.S. 49:951 et seq., the Administrative Procedure Act, and LSA-R.S. 37:923, for judicial review of the Board's order.[1] The Nineteenth Judicial District Court affirmed the order of the Board and dismissed Ms. Davis's petition for judicial review. Thereafter, Ms. Davis filed this appeal.
Our review of this matter is governed by the provisions of LSA-R.S. 49:964, more specifically, Section G. which provides:
G. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record....
Neither this court nor the district court, which also sits as a reviewing court, is empowered to substitute its judgment for that of the Board if that decision has a rational basis and is supported by sufficient relevant and admissible evidence. Harper v. Louisiana State Board of Nursing, 484 So.2d 857, 859 (La.App. 1st Cir.1986). An agency decision is entitled to great weight and should be upheld unless it is manifestly erroneous or arbitrary and capricious. Gulf States Utilities v. Louisiana Public Service Commission, 578 So.2d 71, 84 (La.1991), cert. denied, 502 U.S. 1004, 112 S.Ct. 637, 116 L.Ed.2d 655. The manifest error doctrine relates only to factual findings of the trier of fact and has no application to conclusions of law or public policy. Liberty Mutual Insurance Company v. Louisiana Insurance Rating Commission, 589 So.2d 70, 71 (La.App. 1st Cir.1991), writ denied, 590 So.2d 597 (La.1992). The arbitrary and capricious, or abuse of discretion rule applies to review of the punishment or disciplinary action. Harper, 484 So.2d at 859.
The Board was established in order to "safeguard life and health." LSA-R.S. 37:911. To that end, the applicable version of LSA-R.S. 37:921 provides that the Board may deny any license to practice as a registered nurse upon proof that the person:
A. Is guilty of selling or attempting to sell, falsely obtaining, or furnishing any nursing diploma or license to practice as a registered nurse;
B. Is guilty of a felony;[2]

*174 C. Is unfit or incompetent by reason of negligence, habit or other causes;
D. Is habitually intemperate or is addicted to the use of alcohol or habit-forming drugs;
E. Is guilty of aiding or abetting anyone in the violation of any provisions of this Part;
F. Is mentally incompetent; or
G. Has violated any provisions of this Part.
Ms. Davis contends that the Board's decision was based on an error of law because it concluded that she was "guilty of a felony" under the provisions of LSA-R.S. 37:921. Ms. Davis argues that the executive pardon she received in 1995 operates to restore innocence, erasing her previous conviction of guilt and that the Board erred in failing to give effect to the pardon.
Ms. Davis received a "first offender" pardon from Governor Edwards on January 5, 1995. However, because the date of her conviction predated the 1974 Louisiana Constitution, the pardon was granted under the provisions of the 1921 Louisiana Constitution as amended by Acts 1968, No. 662. See La. Const. Art. 14, § 26; State v. Maduell, 326 So.2d 820, 829 (La.1976); State v. Harvey, 329 So.2d 731, 733 (La.1976). Article V, § 10 of the Louisiana Constitution of 1921,[3] in effect at the time Ms. Davis was sentenced, provided:
The governor shall have power to grant reprieves for all offenses against the state; and may, except in cases of impeachment, or treason, upon the recommendation in writing of the lieutenant governor, attorney general, and presiding judge of the court before which the conviction was had, or any two of them, grant pardons, commute sentences, and remit fines and forfeitures; provided, however, that each first offender who has never previously been convicted of a felony shall be eligible for pardon automatically upon completion of his sentence without the aforementioned recommendation in writing. In case of treason he may grant reprieves until the end of the next session of the legislature, in which body the power of pardoning is vested. [Emphasis supplied.]
The question before us is what effect the Board should have given the gubernatorial pardon granted to Ms. Davis in the context of her application for approval to sit for the NCLEX-RN. The effects of pardons have been most frequently addressed in cases challenging the use of the previously pardoned conviction for penalty enhancement purposes.
In State v. Lee, 171 La. 744, 132 So. 219 (1931), the defendant was convicted of forgery and was charged with being a second offender based on a previously pardoned conviction. The issue before the court was whether or not the pardoned crime could be used to enhance the penalty under his present conviction. The Lee court adopted the minority English rule, giving full force and effect to executive pardon and held the pardon restores the original status of the pardoned individual, and could not be used to enhance his penalty under a subsequent conviction. The court quoted Justice Field in Ex parte Garland, 4 Wall. 333, 71 U.S. 333, 18 L.Ed. 366 as follows:
"A pardon reaches both the punishment prescribed for the offence and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had *175 never committed the offence.[4] * * * If granted after conviction, it removes the penalties and disabilities, and restores him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity.
"There is only this limitation to its operation: it does not restore offices forfeited, or property interests vested in others in consequence of the conviction and judgment."
132 So. at 219-220.
The court went on to explain that because the pardoning power is an executive function, it cannot be exercised or limited in its effect, by Congress or by the legislature of a state.
In State v. Selmon, 343 So.2d 720, 722 (La.1977), the court held that the provision of Article I, § 20 of the 1974 Louisiana Constitution which restores "full rights of citizenship... upon termination of state ... supervision following conviction for any offense," does not preclude the state from using a prior conviction to enhance the penalty for a subsequent crime. The court further distinguished the pardon in Article I, § 20 from a full and complete pardon by the governor in that the former only restores the "rights of citizenship" whereas the latter restores the "status of innocence."[5] See also State v. Childers, 197 La. 715, 2 So.2d 189 (1941); State v. Lee, 171 La. 744, 132 So. 219 (1931).
In State v. Adams, 355 So.2d 917 (La. 1978), the court was again faced with the issue of whether a pardoned offense could be used to enhance the penalty of a subsequent conviction under the habitual offender statute. In this case, the defendant was convicted of armed robbery and sentenced as a second offender. The defendant appealed his conviction contending that he received a pardon for his first conviction and thus it could not be used to enhance his penalty under the present conviction.
The Adams court concluded that the previously pardoned conviction could be used for purposes of the habitual offender statute because the pardon granted for the offense was granted under the automatic pardon provisions of Art. 4, § 5(E)(1) of the 1974 Constitution which provide in pertinent part:
[A] first offender never previously convicted of a felony shall be pardoned automatically upon completion of his sentence, without a recommendation of the Board of Pardons and without action by the governor.
The Adams court distinguished the automatic pardon from a full and complete pardon by the governor which would preclude the use of a pardoned offense to enhance punishment. The court explained:
We recognize that there is a difference in the effect of a `pardon' under Art. 4, § 5(E)(1) and restoration of `full rights of citizenship' under Art. 1, § 20. Art. 1, § 20 restores only the basic rights of citizenship, such as the right to vote, work or hold public office. On the other hand, Art. 4, § 5(E)(1) restores privileges as well as rights, such as the privilege of holding a liquor license. That does not mean, however, that the automatic pardon provision restores the status of innocence to the convict who has merely served out his sentence.
* * * * * *
A full pardon granted by the governor has presumably been given the careful consideration of several persons who have taken into account the circumstances surrounding the offense, and particular facts relating to the individual. We do not feel, however, that the delegates to the 1973 Constitutional Convention ... intended that service of one's sentence be the only prerequisite for restoration of the status of innocence....

*176 Hence, we hold that the automatic pardon provision of Art. 4, § 5(E)(1) does not preclude consideration of a first felony conviction in adjudicating a person as a habitual offender. [Emphasis in original.]
355 So.2d at 922.
In the instant case, Ms. Davis was granted a "first offender" pardon under the 1921 Louisiana Constitution, as amended in 1968. It appears from the trial court's oral reasons for judgment that it concluded that a distinction exists between a first offender pardon and an executive pardon under the 1921 Constitution. The court gave the following explanation:
Even the pardon itself uses the language "first offender pardon" to Ellen Flood. If I could distinguish the other as what I call an executive pardon versus a first offender pardon. I believe there had to be a recommendation by the lieutenant governor, the attorney general and the presiding judge or two of those for the governor to consider an executive pardon. Be that as it may, I think the Boardand I agree with the Boardconsiders this to be a "first offender pardon" and not an executive pardon which completely cleanses an individual. And in view of that, I do not feel that the Board was arbitrary or capricious.
Although this distinction has not been specifically addressed by the courts, we believe that it is based on sound logic and is in harmony with the jurisprudence on this issue.[6] As stated in Adams, "[a] full pardon granted by the governor has presumably been given the careful consideration of several persons who have taken into account the circumstances surrounding the offense, and particular facts relating to the individual." State v. Adams, 355 So.2d at 922. A first felony pardon under the 1921 Constitution requires no such consideration; to the contrary, each first felony offender "shall be eligible for pardon automatically upon completion of his sentence." Thus it appears as though the governor's signature is merely a formality in such cases.[7] A pardon granted under such circumstances does not restore innocence.
We believe that the reasoning set forth in Adams, denying the status of innocence to a felon pardoned under the automatic first felony pardon provisions of the 1974 Constitution,[8] applies with equal force to a first felony pardon under the 1921 Constitution. Accordingly, the first felony pardon granted to Ms. Davis restores her basic rights of citizenship,[9] such as the right to vote, work or hold public office, and it also restores privileges such as state licensing. However, it does not restore innocence.
It is also important to note that LSA-R.S. 37:921 authorizes the Board to consider whether an applicant is "guilty" of a felony as opposed to "convicted" of a felony. This distinction becomes important when the reviewing authority is relying solely on the fact of a conviction of a felony as support for its action. Accordingly, when a conviction is pardoned, it is incumbent upon the Board to inquire into the facts and circumstances underlying the conviction before making its determination. *177 Compare Louisiana State Bar Association v. Porterfield, 550 So.2d 584 (La. 1989), and Dubuclet v. Home Insurance Company, 94-2352 (La.App. 4th Cir. 6/29/95), 660 So.2d 67, writ denied, 95-2591 (La.12/15/95), 664 So.2d 446.
Plaintiff contends that even if the Board were permitted to consider the conduct of Ms. Davis, the record does not include any evidence to support that she was guilty of a felony other than the fact of the conviction.[10] We disagree. Evidence in the record reveals that Ms. Davis' husband died of arsenic poisoning and that during a search of the home in which Ms. Davis lived with her husband, traces of arsenic were found in six bottles of medicine. Evidence in the record also reveals that Mr. Davis was a physically and verbally abusive husband.[11] We believe that it is sufficient for the Board to rely on undisputed facts established in the criminal proceedings as related by the witnesses testifying before the Board. Retrying the crime is not necessary. Furthermore, we note that LSA-R.S. 37:922(D) provides that "[t]he board shall not be bound by strict rules of procedure or other laws of evidence in the conduct of its proceedings."
Based on the record before us, we cannot say that the Board erred as a matter of law in concluding that Ms. Davis was guilty of a felony or unfit, nor do we believe that it was arbitrary or capricious in denying Ms. Davis' request to sit for the NCLEX-RN. The underlying crime is serious, bears directly upon her moral fitness and trustworthiness, and goes to the very heart of the activities of the nursing profession.
For the reasons set forth, we affirm the judgment of the trial court affirming the order of the Louisiana State Nursing Board. Costs of this appeal are assessed against the appellant, Ms. Davis.
AFFIRMED.
NOTES
[1] Ms. Davis also filed a motion for reconsideration or rehearing with the Board. The motion was denied.
[2] The substance of LSA-R.S. 37:921(B) was amended by Act 1995, No. 633 § 1 effective Jan. 1, 1996, is now contained in LSA-R.S. 37:921(2) and provides: "Is convicted of a crime or offense which reflects the inability of the nurse to practice nursing with due regard for the health and safety of clients or patients or enters a plea of guilty or nolo contendere to a criminal charge regardless of final disposition of the criminal proceeding, including, but not limited to, expungement or non adjudication."
[3] The comparable provision in the Louisiana Constitution of 1974 is Article 4, § 5(E), which provides:

(1) The governor may grant reprieves to persons convicted of offenses against the state and, upon recommendation of the Board of Pardons, [Footnote omitted.] may commute sentences, pardon those convicted of offenses against the state, and remit fines and forfeitures imposed for such offenses. However, a first offender never previously convicted of a felony shall be pardoned automatically upon completion of his sentence, without a recommendation of the Board of Pardons and without action by the governor. [Emphasis supplied.]
[4] See In re North, 62 F.3d 1434 (D.C.Cir.1994), questioning the value of the Garland decision as precedent.
[5] We note that the restoration of innocence from a full pardon is not without limitations. See State v. Boudreaux, 221 La. 1078, 61 So.2d 878 (1952), wherein the court held that pursuant to former LSA-R.S. 15:495 a defendant who takes the stand for the purpose of testifying may be questioned concerning a pardoned conviction.
[6] Although State v. Lee, 171 La. 744, 132 So. 219 (1931), held that an executive pardon restores innocence and could not be used to enhance the penalty of a subsequent crime, it was decided prior to the 1968 constitutional amendment to § 10 of Article V which provided that a first offender would be "eligible for pardon automatically upon completion of his sentence, without recommendation of the lieutenant governor, attorney general and presiding judge of the court in which the conviction was returned...." Before the 1968 amendment, § 10 of Article V simply provided a pardon procedure without distinction between first or multiple offenders. All pardons required the recommendation of the lieutenant governor, attorney general and presiding judge of the court in which the conviction was returned or at least the recommendation of two of the officials. See also State v. Childers, 197 La. 715, 2 So.2d 189 (1941).
[7] As noted previously, the language of the comparable provision of the 1974 constitution is virtually identical except for the necessity of gubernatorial action.
[8] See also LSA-R.S. 15:572 E.
[9] We note that the restoration of rights is not without limitations. See State v. Wiggins, 432 So.2d 234, 237 (La.1983), wherein the court held that the legislature has the authority under its police power to limit the "rights of citizenship" restored by an automatic pardon by the provisions of LSA-R.S. 14:95.1 limiting a convicted felon's right to carry arms.
[10] This argument is further espoused in Ms. Davis's motion to strike portions of the Board's brief. Mr. Davis contends that the portions of the Board's brief which refer to the evidence introduced in Ms. Davis's state criminal proceeding should be stricken. However, because of our disposition of the merits in this matter, we deny Ms. Davis's motion to strike.
[11] During the proceedings the Board specifically requested that Ms. Davis present mitigating facts of the crime. Ms. Davis denied murdering her husband and in an effort to prove this fact introduced the testimony of Mr. Anthony Plakiotis, a polygraphist, who testified that the polygraph that he administered to Ms. Davis, shortly before the hearing, indicated that she was telling the truth when she denied murdering her husband or administering arsenic to him.