804 So.2d 34 (2001)
James Morris GORDON
v.
LOUISIANA STATE BOARD OF NURSING.
No. 2000 CA 0164.
Court of Appeal of Louisiana, First Circuit.
June 22, 2001.
Writ Denied November 16, 2001.
*35 Robert G. Pugh, Jr., Shreveport, for Plaintiff-Appellee James Morris Gordon.
E. Wade Shows, Carlos A. Romanach, Baton Rouge, for Defendant-Appellant Louisiana State Board of Nursing.
Before: PARRO, FITZSIMMONS, and GUIDRY, JJ.
GUIDRY, Judge.
A state licensing board appeals the reversal of its decision to deny licensure to an applicant. For the following reasons, we affirm the judgment of the district court and remand for the assessment of court costs, pursuant to La. R.S. 13:5112.

FACTS AND PROCEDURAL HISTORY
James Gordon was licensed as a registered nurse (RN) in Louisiana on March *36 29, 1977.[1] Following his arrest and indictment for the illegal distribution of narcotics, Gordon pled guilty to two counts of distribution of cocaine and one count of conspiracy to distribute cocaine on February 1, 1980. Gordon was sentenced to twenty-, five-, and two-year terms, respectively, at hard labor; said sentences were suspended and Gordon was placed on five years supervised probation. In conjunction with his term of probation, Gordon was ordered to serve one year in the Caddo Correctional Institute, and thereafter to participate in the Odyssey House Program, a drug rehabilitation program in New Orleans, Louisiana.
Following his conviction, the Louisiana State Board of Nursing (LSBN) instituted disciplinary actions against Gordon, which culminated in the revocation of his RN license based on his felony convictions. On April 13, 1982, Gordon's probation was revoked, but he was later granted parole on January 11, 1985. While on parole, Gordon received training and was licensed as a respiratory therapist. On January 25, 1985, Gordon sought to have his RN license reinstated. LSBN initially denied his request based on his failure to complete his parole or obtain a full pardon of the convicted offenses. On August 21, 1991, Gordon satisfactorily completed his term of parole and received a first offender pardon, pursuant to La. Const. art. IV, § 5(E)(1), which was granted automatically "upon completion of his sentence, without a recommendation of the Board of Pardons and without action by the governor."
Gordon's RN license was subsequently reinstated on November 21, 1991, based on his fulfillment of the punishment prescribed for his felony convictions and his completion of certain continuing education requirements for licensure.[2] He subsequently was granted an executive pardon by Governor Edwin Edwards on September 26, 1994.
Thereafter, Gordon pursued a master's degree in nursing with certification as a family nurse practitioner. On June 1, 1998, he applied for an advanced practice registered nurse (APRN) license, specializing as a family nurse practitioner, and was granted a temporary APRN permit based on his fulfilling the credentialing qualifications for the license. Nevertheless, during the application process, LSBN's staff reviewed the National Council of State Boards of Nursing Disciplinary Database, and on being apprised of the prior disciplinary action based on his felony conviction, Gordon was denied licensure as an APRN.
Gordon sought administrative review of the decision by the executive director of the LSBN, the settlement committee of the LSBN, and ultimately, by the LSBN itself, all of whom ratified the decision of LSBN staff to deny APRN licensure. Gordon subsequently filed a petition seeking judicial review of the LSBN's decision. Following a hearing, the district court reversed the decision of the LSBN to deny licensure and remanded the matter to the LSBN for actions consistent with its ruling. On the denial of its motion for rehearing/new trial, the LSBN suspensively appealed the judgment of the district court.

ASSIGNMENTS OF ERROR
On appeal, the LSBN raises the following assignments of error:
Assignment of Error Number One:

*37 The district court did not apply the statutorily required standard of review and substituted its judgment for that of the LSBN.
Assignment of Error Number Two:
The district court erroneously held that a professional licensing board encroaches upon the governor's pardon power when the basis for its license application denial includes a prior guilty plea for drug distribution.
Assignment of Error Number Three:
The district court erred when it held that the LSBN was estopped from denying an APRN license to Gordon on the basis of character.
Assignment of Error Number Four:
The district court's judgment reversed and remanded the LSBN decision without clear instructions.
Assignment of Error Number Five:
The district court's assessment of costs against the LSBN was not supported by the law and the evidence.

DISCUSSION
In its first assignment of error, the LSBN contends that the district court applied the wrong standard of review in overturning its decision. Judicial review of this matter is governed by La. R.S. 49:964(G), which, in pertinent part, states:
G. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
In this assignment of error, the LSBN argues that the district court was required to limit its review, pursuant to the provisions of La. R.S. 49:964(G)(6), and in failing to do so, it improperly substituted its determinations for that of the LSBN. We find this argument by the LSBN to lack merit. In its written reasons for judgment, the district court clearly states that it found the decision of the LSBN to be an abrogation of the constitutional power of the governor and as such, in violation of constitutional provisions. Since this is one of the enumerated bases for which a court is authorized to reverse a decision of an administrative agency under La. R.S. 49:964(G), and if its determination is legally correct, then the district court properly reviewed the matter before it.
Further, this first assignment of error and the second assignment of error address the same issue, namely, whether the LSBN could consider Gordon's felony convictions and the underlying facts supporting the convictions in rendering its decision. *38 For a determination of this issue, we find it appropriate to first consider the types and effect of the pardons granted under the constitution of this state.
In State v. Adams, 355 So.2d 917 (La. 1978), the Louisiana Supreme Court discussed three circumstances under which a convicted felon may obtain the restoration of certain rights and privileges, those circumstances being based on La. Const. art. I, § 20 and La. Const. art. IV, § 5(E)(1). Under La. Const. art. I, § 20, the court held a convicted felon may be restored to the full rights of citizenship. Under the second sentence of La. Const. art. IV, § 5(E)(1), the court held that a convicted felon is restored to privileges as well as rights of citizenship; however, the court noted that the "automatic" or "first offender" pardon provision found in the second sentence of the article does not restore the convicted felon to the "status of innocence." As for the third circumstance, the court held that the first sentence of La. Const. art. IV, § 5(E)(1) provides for a "full executive pardon" that restores the convicted felon to the "status of innocence." State v. Adams, 355 So.2d at 922.
In the case before us, Gordon was granted two pardons, both pursuant to La. Const. art. IV, § 5(E)(1), namely, the automatic or first offender pardon and later, a gubernatorial or full executive pardon. The law is quite clear concerning the effect to be given the automatic or first offender pardon. In Eicher v. Louisiana State Police, Riverboat Gaming Enforcement Division, 97-0121 (La.App. 1st Cir.2/20/98), 710 So.2d 799, writ denied, 98-0780 (La.5/8/98), 719 So.2d 51, and Catanese v. Louisiana Gaming Control Board, 97-1426 (La.App. 1st Cir.5/15/98), 712 So.2d 666, writ denied, 98-1678 (La.10/9/98), 726 So.2d 30, reconsideration denied, 98-1678 (La.11/25/98), 729 So.2d 571, this court held that the state agencies responsible for issuing licenses for gaming could consider the underlying facts constituting the basis for the applicants' felony convictions in their decisions to deny the applicants' licenses. Specifically, this court found in Eicher that the rights of citizenship and privileges restored by the first offender pardon can be limited by the legislature. Eicher, 97-0121 at 12, 710 So.2d at 807. Further, in Catanese, this court held that the receipt of an automatic or first offender pardon did not erase the historical fact of the applicant's felony conviction. Catanese, 97-1426 at 7, 712 So.2d at 670.
Another case, involving the effect of an automatic or first offender pardon on the right of an RN applicant to receive licensure, is Davis v. Louisiana State Board of Nursing, 96-0805 (La.App. 1st Cir.2/14/97), 691 So.2d 170, writ denied, 97-0689 (La.4/25/97), 692 So.2d 1094. In that case, this court held that the provisions of the Louisiana Constitution of 1921, under which Davis was granted a pardon, basically provided for the equivalent of an automatic or first offender pardon (requiring the signature of the governor as a mere formality) under the 1974 constitution, and on that basis, did not constitute a full executive pardon. Davis, 96-0805 at 8, 691 So.2d at 176.
However, in the case before us, Gordon received a full and complete gubernatorial pardon of his conviction that restored privileges as well as rights, in addition to receiving an automatic first offender pardon. Davis, 96-0805 at 7, 691 So.2d at 175, quoting Adams, 355 So.2d at 922. Furthermore, the jurisprudence of this state clearly supports Gordon's argument and the district court's finding that the full gubernatorial pardon restored him to a state of innocence with regard to the pardoned offenses. We also note that in a letter from the Louisiana Board of Pardons dated November 16, 1998, and introduced *39 by Gordon at his hearing before the LSBN, the Board of Pardons stated that it regards the effect of the executive pardon as restoring the individual to the status of innocence. In State v. Lee, 171 La. 744, 132 So. 219 (1931), the Louisiana Supreme Court favorably endorsed a line of cases giving full force and effect to executive pardons. Among the line of cases cited was Ex Parte Garland, 71 U.S. 333, 18 L.Ed. 366, 4 Wall. 333 (1866), from which case the Louisiana Supreme Court, in State v. Lee, quoted the following language as defining the operation and effect of a full executive pardon:
A pardon reaches both the punishment prescribed for the offence and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence. * * * If granted after conviction, it removes the penalties and disabilities, and restores him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity.
There is only this limitation to its operation: it does not restore offices forfeited, or property interests vested in others in consequence of the conviction and judgment.
State v. Lee, 171 La. at 747, 132 So. at 219-220. Considering this description of the operation and effect of the executive pardon, and its endorsement by the highest court of this state, Gordon's restoration to the status of innocence blotted out any existence of guilt, as well as the conviction itself. Therefore, insofar as the decision of the LSBN was based on Gordon's felony conviction, or the underlying facts concerning his guilt with respect to the charged offenses, the decision was erroneously rendered and the ruling of the district court reversing that decision was correct.
The LSBN also contends that based on its rules found in the Louisiana Administrative Code (LAC) at 46:XLVII.3331.A.1, it properly ignored the effect of Gordon's full executive pardon and considered the historical fact of his conviction in denying Gordon licensure as an APRN. Specifically, LAC 46:XLVII.3331.A.1.b.ii provides that an applicant shall be denied approval for licensure if he has pled guilty, nolo contendere, been convicted of or committed a crime which involves the distribution of drugs. Further, LAC 46:XLVII.3331.A.2 states that "a pardon, suspension of imposition of sentence, expungement, or pretrial diversion or similar programs shall not negate or diminish the requirements of this Section." The authority of the LSBN to promulgate these rules is found in La. R.S. 37:918, 920, and 921. Of particular interest is La. R.S. 37:921, which provides:
The board may deny, revoke, suspend, probate, limit, or restrict any license to practice as a registered nurse or an advanced practice registered nurse, impose fines, and assess costs, or otherwise discipline a licensee ... upon proof that the licensee ...:
* * *
(2) Is convicted of a crime or offense which reflects the inability of the nurse to practice nursing with due regard for the health and safety of clients or patients or enters a plea of guilty or nolo contendere to a criminal charge regardless of final disposition of the criminal proceeding, including, but not limited to, expungement or nonadjudication.
La. R.S. 37:921(2) (emphasis added).
Examination of the statutory authority by which the administrative rules at issue were promulgated reveal that the *40 legislature granted the LSBN authority to enact rules pursuant to the provisions listed in La. R.S. 37:921. However, a full executive pardon, and the effects that flow from it, are a matter of grace from the state and a function of the executive branch of government, not subject to limitation or control from the other branches. Bryant v. Louisiana State Pardon Board, 378 So.2d 180, 181 (La.App. 1st Cir.1979), writ denied, 380 So.2d 1211 (La.1980). Accordingly, the LSBN's contention that its decision should be upheld because it acted properly pursuant to legislative authority is likewise rejected, and the two assignments of error based on this contention lack merit.
In its third assignment of error, the LSBN argues that the district court erred in holding that the LSBN should be estopped from denying Gordon APRN licensure based on bad character. The LSBN argues that the district court's decision was based on the erroneous conclusion that because the LSBN found Gordon's character to be sufficiently good to reinstate his RN license and to grant him a temporary APRN permit, it should be estopped from later denying Gordon a license based on character. It is not clear from the district court's reasons for judgment whether its judgment was based in part on this estoppel theory.
As correctly argued by the LSBN, the rules under which Gordon was granted reinstatement of his RN license were amended prior to Gordon's applying for licensure as an APRN. In the intervening period, the Louisiana legislature amended the statute by which the LSBN promulgated its rules governing the licensure of nurses and expanded the bases for which an applicant could be considered to reflect an inability "to practice nursing with due regard for the health and safety of clients or patients." This intervening change in the rules heightened the consideration given by the LSBN in determining whether applicants are fit to practice nursing. Certainly, the LSBN could apply the rules in effect at the time of Gordon's application for APRN licensure. Second, in regard to the granting of the temporary APRN permit, as this court held in Eicher, the failure of public officers to correctly enforce statutory provisions should not be permitted to inhibit correct administration of the law or be construed to estop more diligent enforcement. Eicher, 97-0121 at 8, 710 So.2d at 804. Accordingly, the granting of the temporary permit cannot, alone, form a basis for estopping the action of a governmental agency.
Nevertheless, since we have previously found that the district court correctly prohibited consideration of the pardoned offenses, neither those offenses nor the facts underlying them could form the basis for a showing that Gordon was unable to practice nursing with due regard for the health and safety of clients or patients. The record before us does not provide other evidence sufficient to support such a finding. Therefore, any error by the district court regarding this theory of estoppel is of no consequence to the determination of this matter.
In its fourth assignment of error, the LSBN alleges that the district court reversed and remanded this matter without clearly instructing it on what actions it must take on remand. We disagree and find the district court's instructions to be perfectly clear and therefore reject this assignment of error.
As for its final assignment of error, the LSBN argues that, pursuant to La. R.S. 13:4521(A)(1), the district court was prohibited from assessing costs to the LSBN, a public board. However, a simple reading of that statute reveals that one of *41 the exceptions to its provisions can be found in La. R.S. 13:5112, which, in pertinent part, states:
A. In any suit against the state or any department, board, commission, agency, or political subdivision thereof, the trial or appellate court, after taking into account any equitable considerations as it would under Article 1920 or Article 2164 of the Code of Civil Procedure, as applicable, may grant in favor of the successful party and against the state, department, board, commission, agency, or political subdivision against which judgment is rendered, an award of such successful party's court costs under R.S. 13:4533 and other applicable law as the court deems proper but, if awarded, shall express such costs in a dollar amount in a judgment of the trial court or decree of the appellate court.
Therefore, according to La. R.S. 13:4521(A)(1) and La. R.S. 13:5112, the district court acted properly in assessing court costs. However, we note that the district court failed to express such costs in a dollar amount as mandated by La. R.S. 13:5112. Hence, we remand this matter to the district court for assessment of court costs in a dollar amount. See Citizens, Electors & Taxpayers of Tangipahoa Parish v. Layrisson, 449 So.2d 613, 618 (La.App. 1st Cir.), writ denied, 452 So.2d 170 (La.1984).

CONCLUSION
Based on the foregoing, we affirm the judgment of the district court; however, we remand the case to allow court costs below to be assessed in compliance with La. R.S. 13:5112. Costs of this appeal in the amount of $653.23 are assessed to the Louisiana State Board of Nursing.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.
FITZSIMMONS, J., concurs, and assigns reasons.
FITZSIMMONS, Judge, concurring with reasons.
I respectfully concur in the decision reached in this case. The Louisiana State Board of Nursing (LSBN) is legislatively empowered with the discretion to deny nursing licenses pursuant to nine (9) specified grounds delineated in La. R.S. 37:921. In the factual instance at hand, LSBN based its denial of a license to practice as an advanced practice registered nurse in Louisiana on Mr. Gordon's conviction of a crime involving distribution of drugs. No other reasons were advanced in LSBN's conclusion of law. Accordingly, I agree that the full gubernatorial pardon abrogated the conviction on which LSBN's decision was premised.
NOTES
[1] The record also discloses that Gordon was licensed as an RN by endorsement in the state of Texas on April 10, 1978.
[2] On April 16, 1980, Gordon's license to practice as an RN in Texas was revoked, but was later reinstated on July 20, 1998.