825 So.2d 585 (2002)
Max MALONE, Plaintiff-Appellee
v.
Anthony Scott TUBBS, Defendant/Appellant.
Thomas Reeh, Plaintiff-Appellee
v.
Joe Shyne, et al, Defendants/Appellants.
Nos. 36,816-CA, 36,817-CA.
Court of Appeal of Louisiana, Second Circuit.
September 6, 2002.
Writs Denied September 11 and October 1, 2002.
*587 Anthony Scott Tubbs, Appellant In Proper Person.
Lunn, Irion, Salley, Carlisle, & Gardner, by Richard B. King, Jr., Shreveport, for Joe Shyne.
Larry English, Shreveport, for Raymond Simmons.
Max Malone, Appellee In Proper Person.
Charles H. Kammer, III, Shreveport, for Thomas Reeh.
Bennett L. Politz, Shreveport, for Caddo Parish Clerk of Court.
Ronald J. Miciotto, Shreveport, for Caddo Parish Registrar of Voters.
Wiener, Weiss & Madison, by M. Allyn Stroud, Shreveport, for Joe Shyne.
Before BROWN, WILLIAMS, GASKINS, CARAWAY, PEATROSS, KOSTELKA and HARRISON (Pro Tempore), JJ.
PEATROSS, J.
These consolidated appeals raise the same basic issue: whether the provisions of Article I, Section 10 of the Louisiana Constitution, as amended November 5, 1998, disqualify all candidates for elective office who have been convicted of a felony,[1] who have exhausted all legal remedies and who have neither received a gubernatorial pardon, nor had 15 years elapse from the completion of their original sentence. For the reasons set forth below, we answer this question in the affirmative, and we affirm the trial court's judgments.

FACTS
On August 27, 2002, Max Malone filed a petition challenging the qualifications of Anthony Scott Tubbs for mayor in an upcoming mayoral election in the City of Shreveport. Malone and Tubbs both appeared in proper person at proceedings held on August 29, 2002, in the First Judicial District Court. Malone, who showed he was a qualified elector in the Shreveport mayor's race, introduced evidence showing that Tubbs had pled guilty in April 1999 to the felony crime of arson with intent to defraud. Malone asserted that, because Tubbs had not received a full gubernatorial pardon as required by Article *588 I, Section 10 of the Louisiana Constitution, and because 15 years had not passed since completion of his sentence as also required by Article I, Section 10, Tubbs was disqualified from running for mayor of Shreveport, a position for which Malone showed Tubbs had attempted to qualify. In response, Tubbs argued that he had received an automatic first offender pardon that, like a gubernatorial pardon, is set forth in Article IV, Section 5 of the Louisiana Constitution. Tubbs argued that a pardon could not "mean one thing in the first sentence and a different thing in the second sentence" of the constitutional provision. Tubbs also argued that the provisions of Article I, Section 10, imposing the restrictions on convicted felons conflicted with the provisions of Article I, Section 20, which state, in pertinent part, that full rights of citizenship shall be restored upon termination of state and federal supervision following conviction for any offense. Finally, Tubbs also raised the question of whether the amendment imposing the restrictions applied to him because he was arrested prior to the effective date of the constitutional amendment.
At the conclusion of the proceedings, the trial court found that Malone, as plaintiff, had standing to bring the suit, and that the uncontradicted evidence established that the defendant, Tubbs, had been convicted of a felony. The trial court also stated that, although Tubbs had received a first offender pardon, the evidence did not show that Tubbs received a gubernatorial pardon. Next, the trial court held that the provisions of Article I, Section 10(B)(1) of the Louisiana Constitution disqualify a person as a candidate for public office under such circumstances, including the office of mayor of the City of Shreveport.
Turning to the jurisprudence, the trial court noted that the case of Cook v. Skipper, 99-1448 (La.App. 3d Cir.9/27/99), 749 So.2d 6, writ denied, 99-2827 (La.9/30/99), 745 So.2d 601, held that the pardon reference in Article I, Section 10, must be a gubernatorial pardon and not a first offender automatic pardon, and that an automatic pardon did not restore the right to hold public office as contemplated by the constitution. The trial court also noted that Cook v. Skipper held that a candidate is subject to the provisions of the constitutional amendment if the constitutional amendment is in effect prior to the candidate's qualifying for office, even if the conviction was entered prior to the effective date of the constitutional amendment. The trial court also gave weight to the fact that the Louisiana Supreme Court had declined to review the case.
Finding no other jurisprudence addressing the issues, the trial court entered a judgment disqualifying Tubbs as a candidate for the office of mayor of the City of Shreveport. Tubbs then timely appealed.
The other set of cases now before this court pursuant to these consolidated appeals concern the upcoming election for Shreveport City Council in District "F." Thomas Reeh, a registered voter in District "F", filed a petition on August 28, 2002, naming Joe Shyne and Raymond Simmons as defendants who had qualified as candidates for city council in District "F." Reeh asserted that Shyne was convicted of a felony in federal district court and had not been pardoned, and that 15 years had not elapsed since the date of the completion of Shyne's original sentence. He also asserted that Raymond Simmons had pled guilty to a charge of second degree battery in Caddo Parish and had not received a pardon. Additionally, he asserted that 15 years had not elapsed from the completion of Simmons' original sentence. Based on these assertions, Reeh stated that the defendants did not meet the qualifications for the office they sought *589 and, thus, should be disqualified as candidates. Neither Shyne nor Simmons filed any pleadings in this litigation prior to their notices of appeal. Under Louisiana law, they were not required to file an answer. La. R.S. 18:1406(C). As previously stated, however, both appeared at proceedings conducted on August 29, 2002, in the First Judicial District Court.
After hearing the testimony, receiving evidence and entertaining the arguments of the parties, the trial court found first that Reeh had standing as a registered voter in District "F" to bring the suit. With respect to Shyne, the trial court found that he had been convicted of an offense which would be a felony under the laws of Louisiana, and that his conviction was one contemplated by the amending language to Article I, Section 10 of the Louisiana Constitution. The trial court accepted Shyne's testimony that he had received an automatic first offender pardon, but the trial court concluded that such a pardon did not restore the right to hold public office and did not have the same effect as a full pardon granted by the governor.
As to Simmons, the trial court found that he had been convicted of an offense which is a felony under the laws of Louisiana; and, based on the evidence presented, he had not obtained either an automatic pardon, or a full pardon granted by the governor. Although the trial court did not make a specific finding on the length of time elapsing since Shyne and Simmons had completed serving their original sentences, the evidence clearly showed that 15 years had not elapsed in either instance.
Once again the trial court cited Cook v. Skipper, supra, and the fact that the Louisiana Supreme Court denied writs in the case. Based upon the jurisprudence, the facts presented and the applicable constitutional law, the trial court concluded that both Shyne and Simmons were disqualified from seeking the office of Shreveport City Council, District "F."
We note that, during the proceedings, counsel for Shyne asserted that his client was alleging the unconstitutionality of the disqualifying language of Article I, Section 10, that allegedly qualified as an ex post facto law under the United States Constitution. We also note that, after Reeh rested his case, counsel for Shyne moved for an involuntary dismissal on the grounds that there had been no proof that the constitutional amendment to Article I, Section 10, was ever pre-cleared under Section 5 of the Voting Rights Act.
The trial court did not specifically rule on the Voting Rights Act claim at the time of the motion for involuntary dismissal other than to state the trial court's initial belief that the Voting Rights Act did not apply to the case because it involved a constitutional issue. Accordingly, the trial court denied the motion for involuntary dismissal.
After the trial court orally ruled on the merits of the case, Shyne's counsel asserted that Cook v. Skipper, supra, did not specifically address the ex post facto issue or the Voting Rights Act issue. The trial judge then stated that he did not agree with counsel on the application of the Voting Rights Act and that the issue was "a federal issue, and this is a state court." The trial court also implicitly rejected Shyne's argument that the constitutional amendment to Article I, Section 10, was an ex post facto law in violation of the United States Constitution. Shyne and Simmons took timely appeals from the trial court's judgment.

DISCUSSION
Initially, we observe that the pertinent facts of this case are undisputed. We *590 agree with the trial court's factual findings as to all three candidates. Significantly, Tubbs, Shyne and Simmons all were convicted of crimes that subject them to the disqualifying provisions of Article I, Section 10(B) of the Louisiana Constitution. Those provisions state:
The following persons shall not be permitted to qualify as a candidate for elective public office or take public elective office or appointment of honor, trust, or profit in this state:
(1) A person who has been convicted within this state of a felony and who has exhausted all legal remedies, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be a felony and who has exhausted all legal remedies and has not afterwards been pardoned either by the governor of this state or by the officer of the state, nation, government or country having such authority to pardon in the place where the person was convicted and sentenced.
(2) A person actually under an order of imprisonment for conviction of a felony.
The three defendants in these cases also did not qualify for the exception stated in Article I, Section 10(C):
Notwithstanding the provisions of Paragraph (B) of this Section, a person who desires to qualify as a candidate for or hold an elective office, who has been convicted of a felony and who has served his sentence, but has not been pardoned for such felony, shall be permitted to qualify as a candidate for or hold such office if the date of his qualifying for such office is more than 15 years after the date of the completion of his original sentence.
Fifteen years had not elapsed since the completion of the original sentences of any of the three defendants, and we also note that none of the three defendants had received a gubernatorial pardon, although the trial court accepted that both Tubbs and Shyne had received an automatic first offender pardon.
The language of Article I, Section 10, is clear and unambiguous. Under that language, none of the three candidates is eligible to qualify for elective office unless Article I, Section 10, cannot be applied to these defendants: (1) because the application would be an illegal retroactive application under Louisiana law; (2) because the article's disqualifying language, effective November 5, 1998, amounts to an ex post facto law in violation of the United States Constitution; or (3) because the disqualifying language conflicts with other constitutional provisions so as to create ambiguity regarding its application. For the reasons set forth below, however, we find that the provisions of Article I, Section 10, do apply to disqualify the three candidates in these cases.
Shyne, who currently is serving as councilman for District "F," relied in the trial court on opinion 98-445 of the Office of the Louisiana Attorney General. That opinion concerned the effect of the amending constitutional language on an election held on November 3, 1998. Shreveport Mayor Robert W. "Bo" Williams had requested the opinion because Shyne had been elected to the Shreveport City Council on November 3, 1998, but was a convicted felon who had fully served his sentence before qualifying as a candidate prior to the passage of the constitutional amendment. After citing the pertinent constitutional language from Article I, Section 10, the opinion concluded that Shyne was not prohibited from appearing on the general ballot because no objection had been made to *591 his candidacy. The opinion, however, noted that a question remained as to whether Shyne, after being elected, was qualified to take office. The opinion cited La. C.C. art. 6 which provides that, in the absence of contrary legislative expression, substantive laws apply prospectively only. The opinion also cited the supreme court's opinion in Rousselle v. Plaquemines Parish School Board, 93-1916 (La.2/28/94), 633 So.2d 1235, in which the supreme court stated that a two-fold inquiry is required by Civil Code Article 6. First, it must be ascertained whether the enactment expresses legislative intent regarding retrospective or prospective application. If such intent is expressed, the inquiry ends. The supreme court's opinion also stated that, even where the legislature has expressed its intent to give a substantive law retroactive effective, the law may not be applied retroactively if it would impair contractual obligations or disturb vested rights.
According to the attorney general opinion, the amending constitutional language did not express legislative intent regarding retrospective or prospective application of the constitutional amendment. Prior to the amendment, Article I, Section 10, merely suspended a person's right to vote when under an order of imprisonment for conviction of a felony. The amendment, however, changed the law to also prohibit convicted felons from seeking or holding public office within 15 years of completion of sentence and to provide for express restoration of that right by pardon. The opinion concluded that the amending language was a substantive law and could not be applied retroactively. Thus, the amendment could not be applied to affect any person who qualified and was duly elected on November 3, 1998, two days prior to the effective date of the amendment.
In contrast to the attorney general's opinion is the third circuit's opinion in Cook v. Skipper, supra. In that case, a parish resident challenged the candidacy of James Skipper for the office of police juror. Skipper had been convicted of possession with intent to distribute cocaine base, a felony in violation of federal law. The challenge was brought pursuant to the provisions of Article I, Section 10 of the Louisiana Constitution. Skipper contended that he had regained his right to hold public office pursuant to the provisions of La. Const. Art. I, Sec. 20, which, as previously noted, states that "full rights of citizenship shall be restored upon termination of state and federal supervision following conviction for any offense." The third circuit, however, concluded that these provisions were restricted by the amendment to Article I, Section 10, "as the more specific provision must prevail over the more general." In the alternative, Skipper contended that, even if Article I, Section 10, as amended, applied to him, he still met the qualification requirements because the federal crime for which he was convicted was his first offense and he was entitled to an automatic pardon upon completion of his sentence pursuant to La. Const. Art. IV, Sec. 5(E)(1). Those provisions state:
The governor may grant reprieves to persons convicted of offenses against the state and, upon favorable recommendation of the Board of Pardons, may commute sentences, pardon those convicted of offenses against the state, and remit fines and forfeitures imposed for such offenses. However, a first offender convicted of a non-violent crime, or convicted of aggravated battery, second degree battery, aggravated assault, mingling harmful substances, aggravated criminal damage to property, purse snatching, extortion, or illegal use of weapons or dangerous instrumentalities never previously convicted of a felony shall be pardoned *592 automatically upon completion of his sentence, without a recommendation of the Board of Pardons and without action by the governor.
The third circuit, citing State v. Adams, 355 So.2d 917 (La.1978), noted that an automatic pardon pursuant to La. Const. Art. IV, Sec. 5(E)(1), does not have the same effect as a full pardon granted by the governor under the same provision. See also Gordon v. Louisiana State Board of Nursing, 00-0164 (La.App. 1st Cir.6/22/01), 804 So.2d 34, writ denied, 01-2130 (La.11/16/01), 802 So.2d 607. Thus, in light of the amendment to La. Const. Art. I, Sec. 10, the court found that the automatic pardon provision would not restore appellant's rights to hold public office. Moreover, the language of Article I, Section 10, required the pardon to be given by the governor or by an officer of the government having such authority, and the appellant, who was convicted of a federal crime, was provided no relief by the automatic pardon granted in the Louisiana State Constitution.
Finally, Skipper contended that, since he was convicted prior to the amendment to Article I, Section 10, the amended provisions could not be applied retroactively to him. The third circuit, however, stated that the application of the amended law was not a retroactive application. A candidate must possess the necessary qualifications to hold the office sought; and, even when these qualifications change between the time a candidate qualifies to run and the time for the election, the candidate must possess the necessary qualifications. A fortiori, the application of the constitutional amendment, which became effective before Skipper attempted to qualify, could be applied to bar his candidacy.
We agree with the reasoning in Cook v. Skipper, supra, and we disagree with the attorney general's opinion No. 98-445 as to retroactive application of the amendment. While we agree that the amendment to Article I, Section 10, is substantive, it clearly was intended to apply to all convicted felons attempting to qualify for public office after the effective date of the amendment. Such an application is prospective, and not retroactive. Furthermore, no citizen has a "vested right" to keep the qualifications for a particular office from changing for future elections. The citizens of this state have the right, either through legislation or through constitutional amendment, to establish the qualifications for a particular office and to have those qualifications applied to everyone who seeks the office after the new qualifications go into effect.
In addition, we hold that the recent constitutional amendment to Article I, Section 10, is the most specific constitutional statement concerning the effect of a pardon vis-a-vis a convicted felon's right to seek elective office; the amendment is unambiguous and does not conflict with other provisions of the Louisiana Constitution. The reference in the amendments to a pardon by "the governor of this state," is a plain reference to the gubernatorial pardon in the first sentence of Article IV, Section 5(E)(1), and not to the first offender pardon that requires no action by the governor. We find no merit in arguments about the scope and possible application of the other constitutional provisions on pardon and restoration of rights; the jurisprudence, previously cited herein, thoroughly discusses the scope and effect of these provisions. In particular, we reject the argument that the language in Article I, Section 10, concerning a pardon "by the officer of the state, nation, government or country having such authority to pardon" could refer to the Department of Corrections and that the Department has the right to automatically pardon individuals *593 vis-a-vis Article IV, Section 5(E)(1). The language of Article I, Section 10, quoted in the preceding sentence, refers to officers from other states, nations, governments or countries, not the Department of Corrections. Furthermore, the automatic pardon granted by Article IV, Section 5(E)(1), is not granted by the "right" of the Department, but by operation of law.
Having rejected arguments concerning constitutional interpretation and retroactivity, we now turn to the question of whether the amending language to Article I, Section 10, is an ex post facto law in violation of the United States Constitution. Article I, Section 10 of the United States Constitution prohibits states from making any ex post facto law. Article I, Section 23 of the Louisiana Constitution also prohibits such laws.
In DeVeau v. Braisted, 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960), the United States Supreme Court held that a section of the New York Waterfront Commission Act prohibiting a person from soliciting or receiving any dues on behalf of any waterfront union if any officer of such union had been convicted of felony, unless he had been subsequently pardoned or had received a certificate of good conduct, did not constitute an unreasonable means for achieving a legitimate aim, did not violate due process and was not a bill of attainder or an ex post facto law in violation of the Federal Constitution. The Court noted that barring convicted felons from certain employments was a familiar legislative device to insure against corruption in specified, vital areas. The Court also noted that state provisions disqualifying convicted felons from certain employments important to the public interest also had a long history. As for the legislation being an ex post facto law, the Court noted that the mark of an ex post facto law is imposition of what can fairly be designated as punishment for past acts. According to the United States Supreme Court, the question in each case is:
Whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation, such as the proper qualifications for a profession.
Since the proof in that case was overwhelming that New York did not seek to punish ex-felons, but to provide a scheme of regulation of the waterfront to eliminate corruption, it was important whether individuals had previously been convicted of a felony.
In Hawker v. New York, 170 U.S. 189, 18 S.Ct. 573, 42 L.Ed. 1002 (1898), the United States Supreme Court upheld a New York law providing that any person practicing medicine after conviction of a felony was guilty of a misdemeanor. There the court concluded that the state had a right, in guarding the public health, to prescribe good character as one of the necessary qualifications for a practitioner of medicine, and to make conviction of a crime conclusive evidence of the lack of such good character, regardless of when the crime may have been committed. Thus, the New York law was not an ex post facto law in conflict with the United States Constitution. Citing Hawker, the First Circuit in Cases v. United States, 131 F.2d 916 (1st Cir.1942), cert. denied, 319 U.S. 770, 63 S.Ct. 1431, 87 L.Ed. 1718 (1943), later held that the Federal Firearms Act is not an ex post facto law. The First Circuit distinguished Cummings v. Missouri, 71 U.S. (4 Wall.) 277, 18 L.Ed. 356 (1866), upon which defendants rely, and agreed with the Court in Hawker, explaining that, "if the statute is a bona fide regulation of conduct which the legislature has the power to regulate, it is not *594 bad as an ex post facto law even though the right to engage in the conduct is made to depend upon past behavior."
Utilizing the rationale of the Supreme Court in DeVeau, supra, and Hawker, supra, and the First Circuit in Cases, supra, we hold that the amending language to Article I, Section 10 of the Louisiana Constitution is not an ex post facto law in violation of the United States Constitution. See also State ex rel. Olivieri v. State, 00-0172, 1767 (La.2/21/01), 779 So.2d 735, cert. denied, 533 U.S. 936, 121 S.Ct. 2566, 150 L.Ed.2d 730 (2001) and ___ U.S. ___, 122 S.Ct. 208, 151 L.Ed.2d 148 (2001). Rather than being designed to punish convicted felons, the law undoubtedly was designed as a means of achieving good government. By disqualifying all convicted felons who had not received a gubernatorial pardon or who had not had 15 years elapse since the completion of their original sentence, the people of Louisiana chose a reasonable means for helping to achieve the legitimate goals of electing candidates of good character and eliminating corruption in public office.
As for any argument that the provisions of Article I, Section 10 of the Louisiana Constitution violate equal protection, we note that, in Richardson v. Ramirez, 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974) the United States Supreme Court held that the Supreme Court of California erred in concluding that California could no longer, consistent with the Equal Protection Clause of the Fourteenth Amendment, exclude from the franchise convicted felons who had completed their sentences and paroles. Although acknowledging the argument that it is essential to the process of rehabilitating an ex-felon that he be returned to his role in society as a fully participating citizen when he has completed the serving of his term, the court stated that such arguments were properly weighed and balanced in a legislative forum, and it was not for the court to choose one set of values over the other.
We agree that weighing arguments concerning the extent to which ex-felons' rights are restored is a matter for the legislature and not the courts. Furthermore, because a permanent deprivation of even the right to vote does not violate equal protection, we conclude that the lesser deprivation of the right to take public office, but not the right to vote, does not deny equal protection. Likewise, if such a right can be taken from ex-felons permanently, we conclude that the right can be taken away for a lesser period such as the 15 year restriction in Article, I, Section 10(C).
Next, with respect to the issue of the necessity of pre-clearance under Section 5 of the Voting Rights Act of 1965 (42 U.S.C.A.1973c), we observe that the last sentence of the section states:
Any action under this section shall be heard and determined by a court of three judges in accordance with the provisions of section 2284 of Title 28 and any appeal shall lie to the Supreme Court.
Under the above quoted language, it is doubtful that the First Judicial District Court had jurisdiction to consider any issue of pre-clearance under Section 5 of the Voting Rights Act. Assuming arguendo, however, that such jurisdiction was possible, we note that Section 5 allows an action "to enjoin enforcement of such qualification, prerequisite, standard, practice, or procedure." Defendant Shyne brought no such action in the First Judicial District Court. He only made an argument after the close of the plaintiff's case that the case should be dismissed for failure of the constitutional amendment to be pre-cleared. Such an argument is not equivalent *595 to an action and did not invoke the jurisdiction, if any, of the First Judicial District Court on the question of pre-clearance. Moreover, the burden of proof of one challenging a candidate's qualifications does not include a showing that the law upon which the challenge is based has been pre-cleared.
Finally, we reject the argument that the short time period for defending this challenge in the district court denied due process to Shyne. The issues here were largely legal, not factual, and those legal arguments can be argued on appeal. The defendant did not argue this issue to the district court and we find it without merit, although we sympathize with all parties and courts who necessarily must work with short deadlines in election cases.

CONCLUSION
For the reasons set forth above, the judgment of the trial court is affirmed in both cases and as to all three defendants. The costs are assessed to the defendants in each case.
AFFIRMED.
NOTES
[1] The provisions apply not only to a person convicted of a felony in this state, but also to a person convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be a felony.