712 So.2d 666 (1998)
Joseph A. CATANESE, Jr.,
v.
LOUISIANA GAMING CONTROL BOARD, et al.
No. 97 CA 1426.
Court of Appeal of Louisiana, First Circuit.
May 15, 1998.
*667 Richard B. King, Jr., Shreveport, for Plaintiff-Appellee Joseph A. Catanese, Jr.
Thomas A. Warner, III, Department of Justice, Baton Rouge, for Defendants-Appellants Louisiana Gaming Control Board and Louisiana State Police, Riverboat Gaming Enforcement Division.
Before GONZALES, PARRO and GUIDRY, JJ.
PARRO, Judge.
The Louisiana State Police, Riverboat Gaming Enforcement Division ("the Division") refused to renew a permit it had granted to Joseph A. Catanese, Jr. ("Mr. Catanese"), which had allowed him to work as a non-key gaming employee with a riverboat casino. He appealed the permit denial through an administrative process, culminating in a decision from the Louisiana Gaming Control Board ("the Board") that affirmed the decision not to renew his permit. Mr. Catanese petitioned for judicial review and the district court reversed the revocation and ordered the renewal of Mr. Catanese's non-key gaming employee permit. This appeal followed.

FACTUAL AND PROCEDURAL HISTORY
The facts of this case are uncontested. In June 1994, Mr. Catanese applied to the Division for a permit to work as a non-key gaming employee with Horseshoe Casino in Shreveport. On his application, Mr. Catanese disclosed that in 1986, he had pled guilty in state court to possession of cocaine, an offense punishable by imprisonment for more than one year. The application and attached documents also revealed that in January 1991, after completing all the conditions of his sentence, Mr. Catanese received an automatic first offender pardon. The application was reviewed by the Division, which granted Mr. Catanese a non-key gaming employee permit for the period July 1, 1994, through June 30, 1995. This permit was renewed for 1995-96, and Mr. Catanese applied for another renewal for the 1996-97 period.
On October 28, 1996, the Division sent Mr. Catanese a notice that his renewal application had been denied. The notice stated that the denial was based on the provisions of LSA-R.S. 27:76(3), in that Mr. Catanese had "pled guilty to an offense punishable by imprisonment for a period of more than one year," and LSA-R.S. 27:70(A)(2), in that he was "a person whose prior activities, criminal record, reputation, habits, and associations pose a threat to the public interests of this state or to the effective regulation and control of gaming." The notice informed Mr. Catanese that he had a right to appeal this denial to the Board, and that if he appealed, he could continue working until a final determination was made by the Board.
Mr. Catanese appealed to the Board and an administrative hearing was held. Following that hearing, the Board affirmed the decision of the Division to deny Mr. Catanese's renewal application for a non-key gaming employee permit. Mr. Catanese filed a petition for judicial review in the Nineteenth Judicial District Court, naming as defendants the Division, the Board, and the Attorney General for the State of Louisiana. He *668 asked for reversal of the Board's decision and renewal of his permit or, in the alternative, a declaration that the provisions of LSA-R.S. 27:70 and LSA-R.S. 27:76 were unconstitutional as applied in this case. After reviewing the record of the administrative proceedings and considering the briefs and arguments of the parties, the district court determined that the Board had made an error of law in failing to renew Mr. Catanese's permit, and reversed the Board's decision. The court concluded that as a result of the first offender pardon, all rights and privileges of citizenship were automatically restored to Mr. Catanese and his first offense felony conviction ceased to exist. It is from this judgment that the Division and the Board appeal.

STANDARD OF REVIEW
Any person whose application for a gaming permit has been denied by the Division may appeal to the Board. LSA-R.S. 27:88(A).[1] A person adversely affected by a decision of the Board may appeal to the Nineteenth Judicial District Court in accordance with the provisions of the Administrative Procedure Act. LSA-R.S. 27:89. The Administrative Procedure Act specifies that judicial review shall be confined to the record, as developed in the administrative proceedings. LSA-R.S. 49:964(F). The district court may reverse or modify the agency decision if substantial rights of the appellant are prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary, capricious, or characterized by an abuse of discretion or clearly unwarranted exercise of discretion; or (6) not supported and sustainable by a preponderance of evidence as determined by the reviewing court. LSA-R.S. 49:964(G); Pacificorp Capital, Inc. v. State, Through Div. of Admin., 92-1729 (La.App. 1st Cir. 8/11/94), 647 So.2d 1122, 1125, writ denied, 94-2315 (La.11/18/94), 646 So.2d 387.[2] On legal issues, the reviewing court gives no special weight to the findings of the administrative tribunal, but conducts a de novo review of questions of law and renders judgment on the record. State, Through Louisiana Riverboat Gaming Comm'n v. Louisiana State Police Riverboat Gaming Enforcement Div., 95-2355 (La.App. 1st Cir. 8/21/96), 694 So.2d 316, 319.

ANALYSIS
The Board's decision not to renew Mr. Catanese's permit was based primarily on LSA-R.S. 27:76, which provides, in pertinent part:
The division shall not award a license or permit to any person who is disqualified on the basis of any of the following criteria:
....
(3) The conviction of or a plea of guilty or nolo contendere by the applicant, or of any person required to be qualified under this Chapter as a condition of a license, for an offense punishable by imprisonment of more than one year.[3] (Footnote added.)
*669 This statute, which was first enacted and became effective in 1991, stands in apparent contradiction to earlier legislation, found in LSA-R.S. 37:2950, which states, in pertinent part:
A. Notwithstanding any other provisions of law to the contrary, a person shall not be disqualified, or held ineligible to practice or engage in any trade, occupation, or profession for which a license, permit or certificate is required to be issued by the state of Louisiana or any of its agencies or political subdivisions, solely because of a prior criminal record, except in cases in which the applicant has been convicted of a felony, and such conviction directly relates to the position of employment sought, or to the specific occupation, trade or profession for which the license, permit or certificate is sought.
In subsequent paragraphs, this statute indicates that if an agency decides to prohibit an applicant from engaging in an occupation because of a prior criminal conviction, that decision must be in writing and may be appealed under the provisions of the Administrative Procedure Act. LSA-R.S. 37:2950(B) and (C).
A number of agencies are excepted from the provisions of this statute, including "any law enforcement agency." LSA-R.S. 37:2950(D)(1). The Board is not specifically excepted from application of the statute. However, the permit in question, being one for a "non-key gaming employee," is issued by a law enforcement agency, the Department of Public Safety and Corrections, Office of State Police, Riverboat Gaming Enforcement Division. LSA-R.S. 27:20(A)(1)(d)(i). Accordingly, the provisions of LSA-R.S. 37:2950 do not apply to this type of permit.
Article I, Section 20 of the Louisiana Constitution states, in part, that full rights of citizenship shall be restored upon termination of state and federal supervision following conviction for any offense. Additionally, Article IV, Section 5(E)(1) states:
The governor may grant reprieves to persons convicted of offenses against the state and, upon recommendation of the Board of Pardons, may commute sentences, pardon those convicted of offenses against the state, and remit fines and forfeitures imposed for such offenses. However, a first offender never previously convicted of a felony shall be pardoned automatically upon completion of his sentence, without a recommendation of the Board of Pardons and without action by the governor. (footnote omitted).
The district court based its ruling, in large part, on dicta in the Louisiana Supreme Court's decision in State v. Adams, 355 So.2d 917, 922 (La.1978), stating that a pardon granted pursuant to Article IV, Section 5(E)(1) restores the privileges of citizenship, as well as rights. The district court referred to language in Adams that a privilege, such as the holding of a liquor license, would be restored by such a pardon and said, "The court is unable to distinguish between the privilege of holding a liquor license and the privilege of holding a gaming license." However, despite the broadly permissive language in Adams, the supreme court there held that the pardon did not erase the historical fact of the conviction and therefore, the first felony conviction could be used to enhance the sentence associated with a later conviction. Adams, 355 So.2d at 922.
In a subsequent case, State v. Wiggins, 432 So.2d 234 (La.1983), the supreme court held that even certain rights of citizenship may be restricted by the state. In Wiggins, the right to keep and bear arms, a right guaranteed by the United States and Louisiana Constitutions, was implicated. The statute at issue prohibited any person who had been convicted of certain violent crimes from possessing a firearm or carrying a concealed weapon for ten years after completion of his or her sentence, probation, parole, or suspension of sentence. LSA-R.S. 14:95.1. In upholding this statute against a first felony offender who had been automatically pardoned under Article IV, Section 5(E)(1), the Louisiana Supreme Court stated, "Surely, *670 the legislature has the authority under its police power to limit the `rights of citizenship' restored by an automatic pardon...." Wiggins, 432 So.2d at 237.
In this court's recent decision in Eicher v. Louisiana State Police, Riverboat Gaming Enforcement Division, 97-0121 (La.App. 1st Cir. 2/20/98), we agreed that if, as in Wiggins, a right of citizenship could be legislatively limited, even for persons whose first felony convictions are automatically pardoned under the Louisiana Constitution, then certainly a privilege, such as a gaming employee permit, could also be limited by legislation. In the Eicher case, the applicant had disclosed state and federal felony convictions stemming from the same activity. The state conviction had been pardoned; the federal conviction had not. Ms. Eicher argued that her state conviction had ceased to exist as a result of being set aside, pursuant to LSA-C.Cr.P. art. 893(D)(2), and that the first offender pardon of Article IV, Section 5(E)(1), had restored to her all rights and privileges of citizenship. This court rejected that reasoning and upheld the revocation of Ms. Eicher's temporary gaming permit.
Unlike Ms. Eicher, Mr. Catanese has only a single state felony conviction, which has been automatically pardoned pursuant to Article IV, Section 5(E)(1) of the Louisiana Constitution. However, the rationale expressed by this court in Eicher is equally applicable to the present case. The legislature chose to strictly regulate the gaming industry, and it decided to deny gaming permits or licenses to anyone convicted of even one felony. The historical fact of Mr. Catanese's felony conviction is extant. If this court were to conclude that the first offender pardon had somehow erased that fact, we would be judicially obliterating LSA-R.S. 27:76(3). Even though we might conclude that the uniform enforcement of that statute works an undue hardship on persons, such as Mr. Catanese, who have made only one mistake and paid the price for that mistake, we cannot ignore the legislature's clear intent. Accordingly, we conclude that the district court's decision in this case constituted legal error and must be reversed. Under LSA-R.S. 27:76(3), Mr. Catanese is ineligible for a gaming employee permit and the district court should have affirmed the Board's decision not to renew his permit.[4]

CONCLUSION
The judgment of the district court is reversed, and the decision of the Board not to renew the gaming permit of Mr. Catanese, is reinstated. All costs of this appeal are assessed against Mr. Catanese.
REVERSED.
GUIDRY, J., concurs and assigns reasons.
GUIDRY, Judge, concurring.
I respectfully concur. I write separately to add that the case should be remanded to the Nineteenth Judicial District Court for a determination of whether LSA-R.S. 27:76(3), as applied to Mr. Catanese, is constitutional.
In his petition to the district court, Mr. Catanese alternatively pled that if LSA-R.S. 27:70 or LSA-R.S. 27:76 were applied to him, such that his gaming permit could not be renewed, then those statutes were unconstitutional. Furthermore, Mr. Catanese reserved the right to present evidence and argument on this point, should the court rule against him. The district court ruled in his favor, so no further consideration was given to his claim that the statutes, if applied against him, were unconstitutional. In light of that judgment, the parties did not brief the issue to this court.
In Vallo v. Gayle Oil Co., Inc., 94-1238 (La.11/30/94), 646 So.2d 859, the supreme court set out the criteria which must be met before a claim that a statute is not constitutional can be considered by the courts. The claim must be made in a pleading and the attorney general must be served with a copy of the pleading in which the claim is made. Mr. Catanese met these requirements, but because the trial court did not rule on the *671 issue, we are unable to rule on it. However, now that this court has determined that the Division correctly applied LSA-R.S. 27:76(3) to deny the renewal of Mr. Catanese's gaming employee permit, we are authorized by Vallo to remand for a determination of this issue. In the interest of justice, this court should remand this case to the district court for further proceedings on the issue of the constitutionality of the statute, as applied to Mr. Catanese.
NOTES
[1] By Act 7 of the First Extraordinary Session of 1996, the Louisiana legislature enacted the provisions of LSA-R.S. 27:1 et seq., effective May 1, 1996, which established the Louisiana Gaming Control Board as the successor to the Louisiana Riverboat Gaming Commission. LSA-R.S. 27:11 and 31(A)(1). Therefore, the Board can be substituted for all references to the Commission in the gaming statutes. This Act further provided that the Department of Public Safety and Corrections, Office of State Police, was to continue its investigative and enforcement duties for the Board, LSA-R.S. 27:20, and that the Attorney General or his designee was to represent the Board and the Office of State Police relative to all gaming matters in all legal proceedings. LSA-R.S. 27:19.
[2] Although the Pacificorp case refers to the "manifest error" standard of review, LSA-R.S. 49:964(G)(6) was amended in 1997 to allow reversal or modification if the administrative findings are not supported and sustainable by a preponderance of evidence. 1997 La. Acts No. 128, § 1. The Act also designated this amendment as a procedural change and made it applicable to all pending cases.
[3] The Division also noted Mr. Catanese was disqualified on the basis of LSA-R.S. 27:70(A)(2), which states that no person shall be eligible to receive any gaming license or permit if the Division finds that the applicant is a person whose prior activities, criminal record, reputation, habits, and associations pose a threat to the public interest of the state or to the effective regulation and control of gaming. However, in affirming the Division's decision, the Board relied only upon LSA-R.S. 27:76.
[4] Mr. Catanese pled, in the alternative, that if LSA-R.S. 27:70 or LSA-R.S. 27:76 were applied to him, such that his gaming employee permit could not be renewed, then those statutes were unconstitutional. However, he did not brief this issue in the district court or in this court; accordingly, we deem this claim abandoned. Uniform Rules, Courts of Appeal, Rule 2-12.4.