FIRE TECH AND ALCEE SEQUIN
v.
LOUISIANA STATE FIRE MARSHAL
No. 2008 CA 0841.
Court of Appeals of Louisiana, First Circuit.
October 31, 2008.
NOT DESIGNATED FOR PUBLICATION
JIMMIE ARNOLD BRUMFIELD II, Counsel for Plaintiff/Appellant Fire Tech, Inc. and Alcee Sequin.
WAYNE R. "RON" CROUCH, BRANDI R. CANNON, Counsel for Defendant/Appellee Louisiana Office of State Fire Marshal.
Before: KUHN, GUIDRY, and GAIDRY, JJ.
GAIDRY, J.
This is an appeal of civil fines sought to be imposed by the Louisiana State Fire Marshal's Office. Fire Tech, Inc. (Fire Tech) and Alcee Sequin appeal a district court judgment affirming an Administrative Law Judge's (ALJ) decision upholding the proposed imposition of fines pursuant to La. R.S. 40:1651[1] and Louisiana Administrative Code 55:V:3045.A.5 and 55:V:3049.[2] For the following reasons, we affirm the judgment of the district court.

FACTS AND PROCEDURAL HISTORY
Our review of the record establishes that in August 2005, Alcee Sequin, while in the course and scope of his employment with Fire Tech, Inc., serviced several fire extinguishers located aboard the M/V Dixie Trader. In October 2005, the Office of the State Fire Marshal (Fire Marshal), on the basis of a tip unrelated to the fire extinguishers at issue, conducted an inspection of the fire extinguishers located aboard the vessel, which, at the time, was docked at Kirby Inland Marine. The Fire Marshal's investigation revealed that Mr. Sequin had improperly serviced four fire extinguishers.
The investigators photographed the extinguishers, took physical custody of them, and prepared a facility inspection report, which erroneously listed only three of the four extinguishers, the information concerning one of the extinguishers having been transcribed twice. Captain Patrick Pitre, as trip pilot of the M/V Dixie Trader, signed a receipt for the impounded extinguishers. The four extinguishers were then placed in the back seat of the investigator's car, transported to the Fire Marshal's Office where they were logged in as evidence, and maintained in an environmentally secure location until they were transported to the hearing location before the ALJ.
The Fire Marshal's witness, Mr. Boyd Petty, testified that he has been employed in the Fire Marshal's licensing section since 2000 and has attended numerous code training courses on the National Fire Prevention Act (NFPA) and courses sponsored by fire protection certification companies regarding inspecting, servicing, and properly maintaining portable fire extinguishers. Mr. Petty has obtained fire inspector certification. He observed that the four fire extinguishers serviced by Mr. Sequin had dents, cuts, pitting, and /or corrosion. Mr. Sequin had not condemned any of the extinguishers nor did he hydrostatically test them; rather, he tagged all of the extinguishers as "suitable and ready for use". Based on these observations, it was determined that Mr. Sequin and Fire Tech, Inc., as his employer, had violated NFPA 10, Section 7.1.3, 2002 Edition.[3]
Mr. Petty conceded that he could not unequivocally attest to the condition of the extinguishers on the day that Mr. Sequin serviced them. However, his training, experience, and plain "common sense" aided his determination that such damage could simply not have occurred in a span of only two months following the service date.
Deputy Fire Marshal Inspector Armond Lombas also testified concerning the status of the fire extinguishers. The ALJ accepted Mr. Lombas as an expert in maintaining and servicing fire extinguishers based on his twenty-seven years of service in the field and on the basis that he has inspected somewhere between 75,000 and 100,000 fire extinguishers. Mr. Lombas testified that the extent of the corrosion noted on the extinguishers would have taken at least a couple of years to develop and simply could not have occurred in a two-month period. He rendered an opinion that for such corrosion to occur within a two-month period, the extinguishers would have had to be soaking continuously in corrosive material. Moreover, such treatment also would have resulted in the corrosion of the handles of the extinguishers, which were not damaged. Mr. Lombas also testified that a Fire Tech inspection sticker appeared to have been placed over a gash in an aluminum extinguisher, indicating that the gash had been present at the time Mr. Sequin serviced it. Like Mr. Petty, Mr. Lombas could not testify to the condition of the extinguishers in August 2005; however, based on his training, experience, and plain "common sense" he determined that the damage to the extinguishers could not have occurred within a two-month period.
Captain Patrick Pitre was subpoenaed by both parties. He testified that he was working as temporary pilot of the M/V Dixie Trader on the date the fire marshal confiscated the fire extinguishers. Captain Pitre denied making the complaint to the fire marshal concerning the state of the fire extinguishers;[4] however, he did direct the fire marshal investigator to additional extinguishers located on the second deck. Additionally, he testified that on the date of the inspection, the fire marshal investigator inspected the extinguishers only, and not the vessel. Pitre testified that these particular fire extinguishers were standing loose on the deck, not tacked down in any manner, and that the boat crew tossed these things around while performing work on the vessel; however, on re-cross, he conceded that it was possible that these extinguishers might have been secured on the back deck, Captain Pitre testified that this particular boat, a push boat, travels through both river water and salt water. Captain Pitre could not testify to the whereabouts of the M/V Dixie Trader between August 2005 and October 2005.
Mr. Alcee Sequin testified on his own behalf and on behalf of his employer, Fire Tech. Mr. Sequin testified that he had been employed by Fire Tech for approximately nine and one-half years. In August 2005, he received a call from Kirby Inland Marine to perform an annual inspection of fire extinguishers. He denied that the condition of the fire extinguishers on the date he serviced them was the same condition in which they appeared at trial.[5]
At the conclusion of the hearing, the ALJ took the matter under advisement. On January 10, 2007, the ALJ issued a Decision and Order affirming the fines sought to be imposed by the Office of State Fire Marshal. Thereafter, on January 17, 2007, Mr. Sequin and Fire Tech filed a Petition for Judicial Review in the district court. Finding no manifest error, the district court judge on February 14, 2008, affirmed the action of the ALJ. From this ruling, Alcee Sequin and Fire Tech appeal.

SPECIFICATIONS OF ERROR
On appeal, Alcee Sequin and Fire Tech assert the district court erred in the following respects: (1) in affirming the ALJ's ruling that the Notices of Violation provided sufficient notice to them and afforded them due process; (2) in affirming the ALJ's conclusion that the Office of State Fire Marshal had jurisdiction over this matter as opposed to the U.S. Coast Guard; (3) in concluding that the evidence supported the fire marshal's actions; and (4) in not finding that the ALJ's decision was manifestly erroneous.[6]

LAW AND ANALYSIS
A party aggrieved by a final decision in an adjudication proceeding is entitled to judicial review by a district court. La. R.S. 49:964. However, the extent of the review by the district court is governed by the Administrative Procedure Act. La. R.S. 49:964(G). The Administrative Procedure Act specifies that judicial review shall be confined to the record, as developed in the administrative proceedings. La. R.S. 49:964(F). The district court may reverse or modify the agency decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary, capricious, or characterized by an abuse of discretion; or (6) not supported and sustainable by a preponderance of the evidence as determined by the reviewing court. La. R.S. 49:964(G). Pacificorp Capital, Inc. v. State, Through Div. Of Admin., Office of State Purchasing, 92-1729 (La. App. 1st Cir. 8/11194), 647 So.2d 1122, 1125, writ denied, 94-2315 (La. 11/18/94), 646 So.2d 387. On legal issues, the reviewing court gives no special weight to the findings of the administrative tribunal, but conducts a de novo review of questions of law and renders a judgment on the record. Catanese v. Louisiana Gaming Control Bd., 97-1426 (La. App. 1st Cir. 5/15/98), 712 So.2d 666, 668, writ denied, 98-1678 (La. 10/9/98), 726 So.2d 30.

SUFFICIENCY OF NOTICE
In a preliminary motion and at the hearing, Alcee Sequin and Fire Tech asserted that the matter should be dismissed for lack of sufficient notice under the auspices of Cleveland Bd. of Ethic. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). An essential principle of due process is that a deprivation of life, liberty or property be preceded by notice and opportunity for hearing appropriate to the nature of the case. Loudermill, 470 U.S. at 542, 105 S.Ct. at 1493. The issue in Loudermill was limited only to whether Mr. Loudermill had been afforded an opportunity to be heard, and not to whether he had been afforded proper notice. Therefore, we find Loudermill inapplicable to the instant case.
However, appellants herein do complain that they were not afforded sufficient notice. We disagree. Our review of the Notices of Violation reveal that appellants were notified in writing, with sufficient specificity, of the violations against them and of the proposed action or civil penalties to be assessed against them.[7] Accordingly, we find this specification of error lacks merit.

JURISDICTION
Louisiana Revised Statutes 40:1651, in effect at the time of the fire marshal's investigation in this case, provided that the Office of State Fire Marshal shall have the authority to "regulate the leasing, renting, selling, and servicing of portable fire extinguishers". (Emphasis added.) The statute provided no limitation concerning where the fire extinguishers are located. Boyd Petty testified that he conducted an inspection of the fire extinguishers located on the vessel, and not of the vessel itself. He testified that his authority extends only to the contractors who service portable fire extinguishers. Additionally, Petty testified that he was accompanied aboard the vessel by Lt. Gretchen Bailey, U.S. Coast Guard, as a professional courtesy only.
We find unpersuasive the case of United States v. Baker, 609 F.2d 134 (5th Cir. 1980), cited by appellants in support of their position that the Office of State Fire Marshal lacked jurisdiction in this matter. In the first instance, Baker was a criminal case questioning the constitutionality of the Coast Guard's seizure of marijuana during a routine administrative and safety check of a vessel. Appellants herein rely on a passage in the case, which provides "[t]he district court found that the Coast Guard officer discovered the marijuana bales in plain view as he was being escorted on a valid administrative and documentation inspection of the bilges, fire extinguishers and oil pollution placard in the engine room." Id. at p. 140. We infer that appellants suggest that this text lends support to their argument that only the Coast Guard properly exercises jurisdiction to conduct checks of equipment located aboard vessels. We agree that 14 U.S.C.A. § 89(a) confers jurisdiction to the U.S. Coast Guard to make random administrative, documentation, and safety checks aboard vessels; however, we do not agree that this grant of authority prohibits the state fire marshal from inspecting fire extinguishers serviced by state contractors, which just happen to be located aboard vessels. Accordingly, we also find that this specification of error lacks merit.

MANIFEST ERROR[8]
Initially, we note that as a reviewing court neither we nor the district court are empowered to substitute our judgment for that of the administrative agency if that decision has a rational basis and is supported by sufficient relevant and admissible evidence. Davis v. Louisiana State Bd. of Nursing, 96-0805 (La. App. 1st Cir. 2/14/97), 691 So.2d 170, 173; writ denied, 97-0689 (La. 4/25/97), 692 So.2d 1094. Our concern must be whether the factual determinations are arbitrary and capricious, or otherwise unlawful. Summers v. Sutton, 428 So.2d 1121, 1129 (La. App. 1st Cir. 2/22/83). We have reviewed the entire record carefully, and we find that there is sufficient evidence in the record to support the ALJ's findings of facts.[9] We are also of the opinion that the ALJ's order of which appellants complain is not arbitrary and capricious. We find no error in the ALJ's acceptance of the testimony of the fire marshal's witnesses that these fire extinguishers could not have degraded to such an extent within a two-month period. We also find no error in the ALJ's finding that Alcee Sequin and Fire Tech did not carry their burden of proving that Hurricanes Katrina and Rita and the handling of the extinguishers on board were sufficient to deteriorate the fire extinguishers in such a short period of time. Indeed, the record is silent concerning the location of the M/V Dixie Trader and these extinguishers during those hurricanes.
Therefore, for the above and foregoing reasons, the judgment of the district court is affirmed at appellants' costs.
AFFIRMED.
NOTES
[1] The body of law governing the installation and servicing of burglar alarm systems, fire alarm systems, sprinkler systems, CCTV systems, as well as the performance of locksmith work and the servicing of portable fire extinguishers was reorganized pursuant to Act 307 of the 2006 Regular Session of the Louisiana legislature and became effective January 1, 2007. The reorganized section of law is now referred to as the Life Safety and Property Protection Licensing Act and is found at La. R.S. 40:1664.1 to La. R.S. 40:1664.16. The alleged violations in the instant case occurred prior to January 1, 2007, and therefore are governed by the prior law.
[2] Louisiana Administrative Code 55:V:3045.A.5 provides, in part, that the following acts are prohibited and shall be considered grounds for administrative action... "planning, certifying, inspecting, installing, maintaining or servicing fire protection sprinkler systems or fire protection systems and/or equipment contrary to applicable NFPA codes, standards, and/or manufacturer's specifications without specific written permission from the Office of State Fire Marshal." Louisiana Administrative Code 55:V:3049 provides the administrative action that the Office of State Marsha] may pursue for the violation of LAC 55:V:3045.A.5, which includes the imposition of fines.
[3] The Notices of Violation introduced into evidence propose a $200.00 dollar fine against Mr. Sequin and a $1,000.00 fine against Fire Tech. Mr. Petty testified that the fines are assessed per each fire extinguisher found to be in violation.
[4] Boyd Petty subsequently identified the original complainant as Mr. Charles P. Woodside, Jr., a former Fire Tech employee. It is noted that the fire marshal investigator was unable to verify the complaints made by Mr. Woodside concerning the servicing of extinguishers located aboard the M/V Dixie Trader; however, once aboard, the fire marshal investigator discerned other violations.
[5] Mr. Michael David, principal/owner of Fire Tech, declined to testify, asserting his fifth-amendment right against self-incrimination. It appears that LAC 55:V.3049.A.3(f) provides that in addition to the assessment of civil fines, the fire marshal may pursue criminal charges or injunctive relief. In lieu of Mr. David's testimony, the fire marshal and Fire Tech agreed to stipulate that the relationship between Mr. Sequin and Fire Tech is one of employer/employee.
[6] In all, appellants assert seven assignments of error; however, we note that several of the assignments of error appear redundant.
[7] See Greenleaf v. DHH, Metropolitan Developmental Center, 594 So.2d 418 (La. App. 1st Cir. 1991), writ denied, 596 So.2d 196 (La. 1992).
[8] We note that the parties, and much of the jurisprudence, refer to the manifest error standard of review. However, La. R.S. 49:964(G)(6) was amended in 1997 to allow reversal or modification if the administrative findings are "not supportable and sustainable by a preponderance of the evidence." 1997 La. Acts No. 128, § 1.
[9] On appeal, Mr. Sequin and Fire Tech contend that the fire marshal's failure to call Mr, Woodside and Lt. Gretchen Bailey as witnesses mandates the application of the presumption that their testimony would have been adverse to the fire marshal. Although an adverse presumption exists when a witness is available to a party and that party fails to call the witness, the presumption is rebuttable and should not apply when the witness is equally available to the opposing party. Augustus v. St. Mary Parish School Bd., 95-2498 (La. App. 1st Cir. 6/28/96), 676 So.2d 1144, 1152. Herein, Mr. Petty testified that Mr. Woodside's complaint against Fire Tech was not validated, but that he discovered infractions upon his independent inspection of the fire extinguishers. Therefore, the fire marshal had no need to call Mr. Woodside. Moreover, Mr. Woodside was just as available to Mr. Sequin and Fire Tech as he was to the fire marshal. With respect to Lt. Bailey, the fire marshal attempted to subpoena her, but apparently failed to comply with the appropriate procedures necessary to compel an appearance by a member of the U.S. Coast Guard. Notwithstanding, the fire marshal determined that Lt. Bailey's testimony was not crucial to its ease. The law requires only that a party put on enough evidence to prove its case. The record reveals that sufficient evidence had already been presented to support the fire marshal's claims. Moreover, the record reveals that the ALJ offered to keep the case open to allow Mr. Sequin and Fire Tech the opportunity to subpoena and compel testimony from Lt. Bailey, and they declined. Accordingly, no adverse presumption is warranted.