VICTORY, J.
 
 *
 

 I,We granted a writ in this election case to determine whether the automatic first offender pardon provisions of La. Const, art. IV, § 5(E)(1) and La. R.S. 15:572 enable a convicted felon to run for public office under La. Const, art. I, § 10(B)(1) before the expiration of 15 years from the completion of the sentence. After reviewing the record and the applicable law, we hold an automatic first offender pardon does not restore a felon’s right to run for public office under La. Const, art. I, § 10(B)(1).
 

 FACTS AND PROCEDURAL HISTORY
 

 Francis Touchet, Jr. (“Touchet”), a duly qualified elector of District B, City of Ab-beville, Vermillion Parish, Louisiana, filed a petition in the 15th Judicial District Court challenging the candidacy of Ernal J. Broussard (“Broussard”) for a seat on the Abbeville City Council.
 
 [1]
 
 The election is scheduled for March 27, 2010. Touchet alleged that Broussard is a convicted felon who has not obtained a gubernatorial or presidential pardon and that fifteen years have not elapsed since defendant completed his sentence.
 

 li>The facts are uncontested. On June 22, 2005, Broussard was charged with and pled guilty to one felony count of aiding and abetting an illegal gambling business in violation of 18 U.S.C. §§ 1955(a) and (2) in the case entitled
 
 United States of America v. Ernal Broussard,
 
 No. 05-60035, United States District Court, Western District of Louisiana.
 

 Broussard was sentenced on April 27, 2006 to two years probation, six months home incarceration, and a fine of $5,000.00. His probation was terminated on December 14, 2007. Touchet alleges that by virtue of his felony conviction, Broussard is prohibited from running for public office for a period of 15 years pursuant to La. Const, art. I, § 10. La. Const, art. I, § 10(B) provides:
 

 (B) Disqualification. The following persons shall not be permitted to qualify as a candidate for elective public office or take public elective office or appointment of honor, trust, or profit in this state:
 

 (1) A person who has been convicted within this state of a felony and who has exhausted all legal remedies, or who has
 
 *988
 
 been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be a felony and who has exhausted all legal remedies and has not after-wards been pardoned either by the governor of this state or by the officer of the state, nation, government or country having such authority to pardon in the place where the person was convicted and sentenced.
 

 (2) A person actually under an order of imprisonment for conviction of a felony.
 

 (C) Exception. Notwithstanding the provisions of Paragraph (B) of this Section, a person who desires to qualify as a candidate for or hold an elective office, who has been convicted of a felony and who has served his sentence, but has not been pardoned for such felony, shall be permitted to qualify as a candidate for or hold such office if the date of his qualifying for such office is more than 15 years after the date of the completion of his original sentence.
 

 Broussard argues he is eligible to run for two reasons: (1) the crime of which he was convicted in federal court is not a felony under Louisiana law and therefore his conviction does not meet the requirements of La. Const, art. I, § |S10(B)(1); and (2) although he was not granted a pardon by the governor or the President, he was granted an automatic pardon as a first offender pursuant to La. Const, art. IV, § 5(E)(1).
 
 [2]
 
 La. Const, art. IV, § 5(E)(1), which delineates the powers of the executive branch, provides:
 

 The governor may grant reprieves to persons convicted of offenses against the state and, upon favorable recommendation of the Board of Pardons, may commute sentences, pardon those convicted of offenses against the state, and remit fines and forfeitures imposed for such offenses. However, a first offender convicted of a non-violent crime ... never previously convicted of a felony shall be pardoned automatically upon completion of his sentence, without a recommendation of the Board of Pardons and without action by the governor.
 
 [3]
 

 
 *989
 
 |4The trial court held a timely hearing pursuant to La. R.S. 18:1409 and rendered judgment disqualifying Broussard as a candidate for the office of councilman of District B, City of Abbeville. The trial court found that Broussard’s Plea Agreement admitted his guilt of all the elements of the Louisiana felony offense of gambling as defined by La. R.S. 14:90. Further, the trial court found that La. Const, art. I, § 10 requires a pardon by the governor or the officer of the state, nation, government, or country having such authority to pardon, and that because Broussard did not receive such a pardon and because 15 years had not elapsed since the completion of his sentence, he was ineligible to run for public office. On appeal, the Third Circuit did not reach the constitutional issue of whether an automatic first offender pardon entitles a convicted felon to run for public office pursuant to La. Const, art. I, § 10(B), but reversed the trial court’s judgment because the facts in the record did not prove Broussard committed a felony under Louisiana law for purposes of La. Const, art. I, § 10(B).
 
 Touchet v. Broussard,
 
 10-188 (La.App. 3 Cir. 2/19/10), 31 So.3d 1164, 2010 WL 572530. We granted plaintiffs writ application and set it for expedited argument and consideration.
 
 Touchet v. Broussard,
 
 10-380 (La.2/24/10), 28 So.3d 261.
 

 DISCUSSION
 

 First, we consider the appellate court’s holding that Broussard’s federal conviction does not constitute a felony under Louisiana law. La. Const, art. I, |fi§ 10(B)(1) disqualifies from candidacy a person who has been convicted under the laws of the United States of a crime which, if committed in this state, would be a felony. The court of appeal found the federal felony to which Broussard pled guilty is not equivalent to the felony proscribed by the state gambling statute set out in La. R.S. 14:90, which provides:
 

 A.(l)(a) Gambling is the intentional conducting, or directly assisting in the conducting, as a business, of any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit.
 

 (b) Whoever commits the crime of gambling shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both.
 

 (2) Whoever conducts, finances, manages, supervises, directs, or owns all or
 
 *990
 
 part of an illegal gambling business shall be fined not more than twenty thousand dollars, or imprisoned with or without hard labor, for not more than five years, or both when:
 

 (a) R.S. 14:90 is violated.
 

 (b) Five or more persons are involved who conduct, finance, manage, supervise, direct, or own all or part of an illegal gambling business.
 

 (c) Such business has been in or remains in substantially continuous operation for a period of thirty days or more or, if the continuous operation is for less than thirty days, has a gross revenue of two thousand dollars in any single day.
 

 The Bill of Information charged Mr. Broussard with violating 18 U.S.C. § 1955(a) reciting:
 

 From on or about October 1, 1998, until on or about October 1, 2003, the exact dates being unknown, in the Western District of Louisiana and elsewhere, the defendant, ERNAL J. BROUSSARD, and at least four or more other persons, did unlawfully, willfully and knowingly conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, or aid in and abet such activity, to wit: illegal gambling involving bookmaking in violation of the State Law of Louisiana, Revised Statute, Title 14, Section 90, said illegal gambling business was conducted during the period aforesaid and remained in substantially continuous operation for a period in excess of thirty (30) days, all in violation of Title 18, United States Code, Sections 1955(a) and 2.
 

 LOn August 11, 2005, Broussard, his attorney and the Assistant United States Attorney entered into a written “Plea Agreement” wherein Broussard agreed to plead guilty to “Count 1 of the Bill of Information charging him with Aiding and Abetting an [iljlegal Gambling Business in violation of Title 18, United States Code, Sections 1955(a) and 2” and to “admit to the court he is in fact guilty of the offense charged.” Those parties also signed a “Stipulated Factual Basis for Guilty Plea,” stating:
 

 From on or about October 1, 1998, until on or about October 1, 2003, ... ER-NAL J. BROUSSARD through his business Package Liquor Exchange ... cashed checks for Phillip Mazella, owner of M & M Consultants. Mr. Mazella operated an illegal gambling business, and the checks processed by Mr. Brous-sard were the result of the illegal bookmaking operation. Mr. Broussard was one of the primary check cashing businesses used by Mr. Mazella and millions of dollars flowed through his business. Mr Broussard was paid a fee for his services. The illegal gambling business employed and was conducted by four or more other persons. The illegal gambling business was in operation for over ten years and had revenues in excess of millions of dollars during the time period charged in the Bill of Information. The defendant ... was not licensed by the State of Louisiana as a money transmitting or check cashing business. Operating an illegal business involving bookmaking is a violation of Louisiana Revised Statute, Title 14, Section 90.
 

 Finally, the Federal District Court Judge considered the elements of the federal offense before accepting Broussard’s plea and read the following to him from the bench before accepting the plea:
 

 In order for you to be found guilty in violation of Title 18, United States Code, Section 1955(a), the United States would have to prove the following essential elements beyond a reasonable doubt:
 

 First: That you, along with four or more persons, knowingly conducted, financed, managed, supervised or owned all or
 
 *991
 
 part of a gambling business as charged or aided and abetted such activity;
 

 Second: That said gambling business violated the laws of the State of Louisiana. Bookmaking is against the laws of the State of Louisiana; and
 

 Third: That said gambling business was in substantially continuous operation for a period in excess of thirty days and had a gross revenue of $2,000 or more in any one day.
 

 In spite of the above elements, which clearly correspond to those found in La. R.S. 14:90, the court of appeal found that although the federal plea “is to a crime comparable to La. R.S. 14:90 which is a felony, the aided and abetted language qualifies the plea and limits it to the charge of aiding and abetting.”
 
 Touchet v. Broussard,
 
 31 So.3d 1164, 1169. The court of appeal concluded that “Louisiana law does not contain an aiding and abetting statute comparable to the federal statute, and Mr. Touchet has pointed the court to no comparable Louisiana felony.”
 
 Id.
 
 However, the court of appeal’s ruling ignores a basic principle of Louisiana statutory criminal law that all persons who aid and abet in the commission of a crime are principals.
 
 See
 
 La. R.S. 14:24 (“All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals”). Thus, it is unnecessary for La. R.S. 14:90, or any other criminal statute, to additionally contain any aiding or abetting provisions as those actors are already considered principals to the crime. For that reason, the court of appeal’s judgment that aiding and abetting an illegal gambling business as delineated in the Bill of Information, Plea Agreement, and Stipulated Factual Basis is not a felony under Louisiana law was erroneous.
 
 [4]
 

 Having resolved that issue, we must now consider the constitutional issue of whether the automatic first offender pardon provided by La. Const, art. IV, § 5 entitles a convicted felon to run for public office before the expiration of 15 years | sfrom the completion of his sentence pursuant to La. Const, art. I, § 10(B)(1). This section disqualifies from candidacy a person who has been convicted “within this state of a felony ... or who has been convicted under the laws ... of the United States ... of a crime which, if committed in this state would be a felony” and who “has not afterwards been pardoned either by the governor of this state or by the officer of the state, nation, government or country having such authority to pardon in the place where the person was convicted and sentenced.” Broussard did not obtain a pardon from either the governor or the President. However, he argues he obtained an automatic first offender pardon under La. Const, art. IV, § 5(E)(1)
 
 [5]
 
 and
 
 *992
 
 that pardon satisfies the requirements of La. Const, art. I, § 10(B)(1). Essentially, Broussard argues an automatic pardon has the same effect as a pardon granted by a governor or other authorized official, such as the President, for purposes of allowing him to run for public office before the expiration of 15 years from the completion of his sentence. Broussard also refers to La. Const, art. 1, § 20, which states in part that “tflull rights of citizenship shall be restored upon termination of state and federal supervision following conviction for any offense.”
 

 These constitutional provisions are to be interpreted using the following principles. First, “if one constitutional provision addresses a subject in general terms, and another addresses the same subject with more detail, the two provisions should be harmonized if possible, but if there is any conflict, the latter will prevail.”
 
 Ocean
 
 Energy,
 
 Inc. v. Plaquemines Parish Government,
 
 04-0066 (La.7/6/04), 880 So.2d 1, 7. Secondly, the latest expression of the will of the people prevails over previously conflicting provisions.
 
 Pumphrey v. City of New Orleans,
 
 05-979 (La.4/4/06), 925 So.2d 1202, 1210. Thus, to the extent that La. |slConst. art. I, § 10, art. I, § 20, and art. IV, § 5 conflict, the above rules will be used to resolve the conflict.
 

 The language found in La. Const, art. I, § 10(B) which disqualified from candidacy for public office a person who has been convicted of a felony was added in 1998 by constitutional amendment, as was the language removing the disqualification for a felon who has “afterwards been pardoned either by the governor of this state, or the officer of the state, nation ... having such authority to pardon ...”
 
 [6]
 
 Article I, § 20, restoring “full rights of citizenship” to convicted criminals who have served their sentence was in existence long before 1998. Further, Article 1, § 20 addresses rights of citizenship in general terms, while Article I, § 10(B) is specifically addressed to the right to run for and hold public office. To the extent these two provisions cannot be reconciled, as “full rights of citizenship” would include the right to run for public office, we find that the former provision has been restricted by the 1998 amendment to Article I, § 10, as the later and more specific provision must prevail.
 

 Regarding Article I, § 10(B) and Article IV, § 5, these two provisions are not in conflict as Article I, § 10(B) is specifically limited to gubernatorial and presidential pardons and makes no mention of automatic first offender pardons. Further, the automatic pardon provision for first offenders was added to the 1921 Constitution by a 1968 amendment.
 
 See
 
 note 9,
 
 infra.
 
 When the pardon process was overhauled during the 1973 Constitutional Convention, the automatic pardon | inprovision remained and was enacted in Article IV, § 5.
 
 Id.
 

 [7]
 

 
 *993
 
 Not only was La. Const, art. I, § 10(B) enacted later than La. Const, art. IV, § 5(E), Article I is in the “Declaration of Rights” section of the constitution, Article IV, § 5 delineates the powers of the executive branch, and § 5(E)(1) grants to the governor the power to pardon.
 
 [8]
 
 Further, § 10(B) specifically addressed the right to run for public office and the provision allowing a convicted felon to run for office expressly applies only to a felon who “has not afterwards been pardoned either
 
 by the governor' of this state
 
 or
 
 by the officer of the state, nation, government or country having such authority to pardon in the place where the person was convicted and sentenced.”
 
 (Emphasis added). Had the people intended for felons who had been granted an automatic first offender pardon to be immediately qualified to run for office pursuant to La. Const, art. I, § 10 they could have said so, and they did not. Instead, a convicted felon is not forever prohibited from running for public office, he simply must wait 15 years from the completion of his sentence. La. Const, art. I, § 10(C).
 

 This Court has previously compared the effect of the automatic first offender pardon with a full gubernatorial pardon. In
 
 State v. Adams,
 
 355 So.2d 917 (La.1978), the Court discussed the automatic first offender pardon in the context of habitual offender adjudications and held while it was clear that a full complete pardon by the governor precludes the use of a pardoned offense to enhance punishment,
 
 State v. Childers,
 
 197 La. 715, 2 So.2d 189 (1941), an automatic |upardon does not preclude consideration of a first felony conviction in adjudicating a person as a habitual offender.
 
 Adams
 
 stated that while a pardon under La. Const, art. IV, § 5(E)(1) restores privileges as well as rights, “[tjhat does not mean, however, that the automatic pardon provision restores the status of innocence to the convict who has merely served out his sentence.” 355 So.2d at 922. The Court reasoned:
 

 “In
 
 State v. Lee,
 
 [171 La. 744, 132 So. 219 (1931)], we stated that “... the pardon restores the original status of the pardoned individual, i.e., a status of innocence of crime.” 171 La. at 746, 132 So. at 219. We also quoted with approval a statement made by the United States Supreme Court in
 
 Ex parte Garland,
 
 [4 Wall. 333,] 71 U.S. 333, 380, 18 L.Ed. 366 (1866), that “... when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense.” 171 La. at 747, 132 So. 220.
 

 A full pardon granted by the governor has presumably been given the careful consideration of several persons who have taken into account the circumstances surrounding the offense, and particular facts relating to the individual. We do not feel, however, that the delegates to the 1973 Constitutional Convention, in including this provision in the 1974 Constitution (or the legislature before them in proposing a similar amendment to Art. 5, § 10 of the 1921 Constitution, La. Acts 1968, No. 662, § 1), intended that service of one’s sentence be the only prerequisite for restoration of the status of innocence. If the legislature had intended that a first of
 
 *994
 
 fense could not be relied upon for the enhancement of punishment, it could easily have said so.”
 
 [9]
 

 Il2^&
 

 Relying on our reasoning in
 
 Adams
 
 that an automatic pardon pursuant to La. Const, art. IV, § 5(E)(1) does not have the same effect as a full gubernatorial pardon under that same provision, every appellate court that has considered the issue has held an automatic first offender pardon does not restore a convicted felon’s right to run for office under La. Const, art. I, § 10(B).
 
 State ex rel. Moreau v. Castillo,
 
 07-1865 (La.App. 1 Cir. 9/24/07), 971 So.2d 1081,
 
 writ denied,
 
 07-1900 (9/28/07), 964 So.2d 349,
 
 cert. denied, Castillo v. Louisiana,
 
 552 U.S. 1110, 128 S.Ct. 896, 169 L.Ed.2d 748 (2008);
 
 Malone v. Tubbs,
 
 36, 816 (La.App. 2 Cir. 9/6/02), 825 So.2d 585,
 
 writs denied,
 
 02-2322 (La.9/11/02), 824 So.2d 1164 and 02-2448 (La.10/1/02), 826 So.2d 1110;
 
 Cook v. Skipper,
 
 99-1448 (La.App. 3 Cir. 9/27/99), 749 So.2d 6,
 
 writ denied
 
 99-2827 (La.9/30/99), 745 So.2d 601. These courts further explained that the language of La. Const, art. I, § 10(B) requires that the pardon must be given by the governor or by the officer of the government having such authority and that because an automatic pardon requires no action, La. Const, art. I, § 10(B) was not referring to an automatic pardon.
 
 Id.
 

 [10]
 

 
 *995
 
 That reasoning is in |isline with our reasoning today and is a correct interpretation of these constitutional provisions.
 

 Broussard suggests statements made in this Court’s opinion in
 
 Malone v. Shyne,
 
 06-2190 (La.9/13/06), 937 So.2d 343, cast doubt on the reasoning of the above cases and suggest this Court may be inclined to hold an automatic first offender pardon does restore a convicted felon’s right to run for office. In
 
 Shyne,
 
 this Court decided in a 4-3 opinion that the governor has the authority to grant a pardon that restores collateral civil rights forfeited as a consequence of state law to a person convicted of a federal crime. The effect of an automatic pardon on the right to run for public office was not at issue in
 
 Shyne
 
 and thus any statements made in that case regarding the automatic pardon are dicta. In fact, twice in
 
 Shyne
 
 the majority stated that because there was no evidence to show whether Shyne was in fact entitled to an automatic pardon, the majority was expressly not considering the merits of that issue. 937 So.2d at 347, n. 1, and 353, n. 5.
 
 [11]
 
 Therefore, no statements in
 
 Shyne
 
 which have any effect on the issue we have decided today.
 

 CONCLUSION
 

 The Louisiana Constitution disqualifies from candidacy for public office those persons who have been convicted within this state of a felony, or convicted under the laws of the United States of a felony which would also constitute a felony under Louisiana law, unless that person has been pardoned by the governor or by the official having the authority to pardon in the place where the person was convicted and sentenced. La. Const, art. 1, § 10(B)(1). Absent a pardon, 15 years |Mmust elapse before a felon can seek public office. In this case, Broussard pled guilty to aiding and abetting an illegal gambling business in violation of 18 U.S.C. §§ 1955(a) and 2. The Bill of Information, Plea Agreement, and Stipulated Factual Basis all confirm that this crime constituted a felony under La. R.S. 14:90. The fact La. R.S. 14:90 does not specifically address aiders and abetters is immaterial, as all persons who aid and abet in the commission of a crime are considered principals under Louisiana law. La. R.S. 14:24. Further, the possibility Broussard obtained an automatic first offender pardon by virtue of La. Const, art. IV, § 5 does not allow him to run for office prior to the expiration of 15 years from the completion of his sentence, as La. Const, art. I, § 10(B)(1) specifically requires that the pardon be granted by the governor or the official having the authority to grant the pardon, such as the President. An automatic first offender pardon is different than a full gubernatorial or presidential pardon in that it does not restore the status of innocence and does
 
 *996
 
 not preclude consideration of a first felony-conviction in prohibiting a person from running for public office until the expiration of fifteen years from the completion of his sentence.
 

 DECREE
 

 For the reasons stated herein, the judgment of the court of appeal is reversed and the judgment of the trial court declaring that Ernal Broussard is disqualified as a candidate for the office of councilman of District B, City of Abbeville is reinstated.
 
 [12]
 

 REVERSED; TRIAL COURT JUDGMENT REINSTATED.
 

 *
 

 Retired Judge Robert L. Lobrano, assigned as Justice ad hoc, sitting for Chief Justice Catherine D. Kimball.
 

 [1]
 

 . La. R.S. 18:1401(A) provides that ‘‘[a] qualified elector may bring an action objecting to the candidacy of a person who qualified as a candidate in a primary election for an office in which the plaintiff is qualified to vote.”
 

 [2]
 

 .
 
 Broussard argued in the lower courts that the entire proceeding is void because of failure to add an indispensable party, and insufficiency in the service of process and the waiver of service of process. Both courts rejected these challenges and we will not address them again here.
 

 [3]
 

 . La. R.S. 15:572 provides further statutory requirements for the operation of an automatic pardon under the constitutional provision, providing as follows:
 

 A.The governor may grant reprieves to persons convicted of offenses against the state and, upon recommendation of the Board of Pardons as hereinafter provided for by this Part, may commute sentences, pardon those convicted of offenses against the state, and remit fines and forfeitures imposed for such offenses. Notwithstanding any provision of law to the contrary, the governor shall not grant any pardon to any person unless that person has paid all of the court costs which were imposed in connection with the conviction of the crime for which the pardon is to be issued.
 

 B. (1) A first offender never previously convicted of a felony shall be pardoned automatically upon completion of his sentence without a recommendation of the Board of Pardons and without action by the governor.
 

 (2) No person convicted of a sex offense as defined in R.S. 15:541 or determined to be a sexually violent predator or a child predator under the provisions of R.S. 15:542.1 et seq. shall be exempt from the registration requirements of R.S. 15:542.1 el seq., as a result of a pardon under the provisions of this Subsection.
 

 (3) Notwithstanding any provision of law to the contrary, no pardon shall be issued to a first offender unless that person has paid all of the court costs which were imposed in connection with the conviction of the crime for which the pardon is to be issued.
 

 C. For the purposes of this Section, "first offender” means a person convicted within
 
 *989
 
 this state of a felony but never previously convicted of a felony within this state or convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would have been a felony, regardless of any previous convictions for any misdemeanors. Convictions in other jurisdictions which do not have counterparts in this state will be classified according to the laws of the jurisdiction of conviction.
 

 D. On the day that an individual completes his sentence the Division of Probation and Parole of the Department of Corrections, after satisfying itself that (1) the individual is a first offender as defined herein and (2) the individual has completed his sentence shall issue a certificate recognizing and proclaiming that the petitioner is fully pardoned for the offense, and that he has all rights of citizenship and franchise, and shall transmit a copy of the certificate to the individual and to the clerk of court in and for the parish where the conviction occurred. This copy shall be filed in the record of the proceedings in which the conviction was obtained. However, once an automatic pardon is granted under the provisions of this Section, the individual who received such pardon shall not be entitled to receive another automatic pardon.
 

 E. Notwithstanding any provision herein contained to the contrary, any person receiving a pardon under the provisions of Subpar-agraph (1) of Paragraph (E) of Section 5 of Article IV of the Louisiana Constitution of 1974 and this Section may be charged and punished as a second or multiple offender as provided in R.S. 15:529.1.
 

 [4]
 

 . The court of appeal apparently also found the federal gambling statute only requires four or more persons be involved, while the state statute requires five or more persons. However, the Bill of Information charged that "ERNAL J.
 
 BROUSSARD, and at least four or more other persons,"
 
 engaged in the prohibited activity, the Stipulated Factual Basis stated that “[t]he illegal gambling business employed and was conducted by
 
 four or more other persons,"
 
 and the federal judge’s colloquy with Broussard before accepting his plea stated
 
 “you, along with 4 or more persons ”
 
 were involved in the prohibited activity. Under any of the above statements, the number of involved parties equals at least five, as required by the Louisiana statute.
 

 [5]
 

 . We accept for the sake of argument today that the automatic first offender pardon provisions apply to federal convictions; however, in no way should this opinion be considered to agree with that argument because we expressly do not address it.
 

 [6]
 

 . The amendment was approved on October 3, 1998 and became effective November 5, 1998. Prior to the 1998 amendment, Art. I, § 10 provided:
 

 Section 10. Every citizen of the state, upon reaching eighteen years of age, shall have the right to register and vote, except that this right may be suspended while a person is interdicted and judicially declared mentally incompetent or is under an order of imprisonment for conviction of a felony.
 

 [7]
 

 . A 1999 amendment to Article IV, § 5(E) only limited the crimes to which a automatic first offender pardon would apply.
 
 See
 
 Acts 1999, No. 1398 (inserting in subpar. (E)(1) “convicted of a non-violent crime, or convicted of aggravated battery, second degree battery, aggravated assault, mingling harmful substances, aggravated criminal damage to property, purse snatching, extortion, or illegal use of weapons or dangerous instrumentalities”).
 

 [8]
 

 . Specifically, the governor's pardon power is limited to the following: "[t]he governor may grant reprieves to persons convicted of offenses against the state and, upon favorable recommendation of the Board of Pardons, may commute sentences, pardon those convicted of offenses against the state, and remit fines and forfeitures imposed for such offenses.” La. Const, art. IV, § 5(E)(1).
 

 [9]
 

 . Under the 1921 Constitution, the governor had the authority to grant pardons and commutations of sentence upon the recommendation of the Lieutenant Governor, the Attorney General, and the judge who presided over the conviction. La. Const, of 1921, art. V, § 10. A 1968 amendment added an automatic pardon for first offenders. The 1973 Constitutional Convention entirely revamped the pardon process. Judge Helen Ginger Berrigan,
 
 Executive Clemency, First-Offender Pardons: Automatic Restoration of Rights,
 
 62 La. L.Rev. 49 (2001). During the convention, a proposal from the Committee on the Executive Department gave the governor the complete and sole discretion to grant pardons and commutations of sentence.
 
 Id.
 
 (citing V Records of the Louisiana Constitutional Convention of 1973; Convention Transcripts at 577 (Aug. 3, 1973)). As soon as that proposal was introduced, another amendment was proposed by some who complained of past gubernatorial abuses of the clemency process, which provided that the gubernatorial power to grant clemency "may [be] restricted or limited’’ by the legislature.
 
 Id.
 
 (citing I Records of the Louisiana Constitutional Convention of 1973; Journal of Proceedings at 261 (Aug. 3, 1973); V Records of the Louisiana Constitutional Convention of 1973; Convention Transcripts at 582-83 (Aug. 3, 1973)). After that amendment was defeated, the next amendment, which was ultimately adopted, proposed the creation of a Pardon Board, provided that the governor could only grant pardons upon the recommendation of this newly created pardon board, and included the automatic pardon for first offenders from the 1921 Constitution.
 
 Id.
 
 (citing I Records of the Louisiana Constitutional Convention of 1973; Journal of Proceedings at 262, 265 (Aug. 3, 1973)). Another amendment to the Constitution passed in 1999 expressly stated that the governor could only pardon based upon a "favorable” recommendation from the Pardon Board. 1999 La. Acts No. 1401.
 

 [10]
 

 . This Court and other appellate courts have recognized the limited effect of an automatic pardon on other rights as follows; an automatic pardon does not prevent a person from being convicted of unlawful possession of a weapon on the basis of the first felony conviction,
 
 State v. Wiggins,
 
 432 So.2d 234 (La.1983); does not alter the prohibition against certain sentence suspensions,
 
 State v. Derouin,
 
 00-1150 (La.App. 3 Cir. 1/31/01), 778 So.2d 1186; does not prevent the state nursing board from denying a nursing student's application to take the registered nurse’s exam on the basis of a felony conviction,
 
 Davis v. State Bd. of Nursing,
 
 96-0805 (La.App. 1 Cir. 2/14/97), 691 So.2d 170,
 
 writ denied,
 
 97-0689 (La.4/25/97), 692 So.2d 1094; does not prevent the denial of professional licenses to persons with first offender pardons such as gaming employee permits,
 
 Eicher v. Louisiana Slate Police, Riverboat Gaming Enforcement Div.,
 
 97-121 (La.App. 1 Cir. 2/20/98), 710 So.2d 799,
 
 writ denied,
 
 98-0780 (La.5/8/98), 719 So.2d 51; does not relieve a convicted sex offender from the registration and notification requirements,
 
 State v. Moore,
 
 
 *995
 
 03-16 (La.App. 3 Cir. 5/14/03), 847 So.2d 53,
 
 writs denied,
 
 03-1480 (La.12/12/03), 860 So.2d 1150 and 04-2931 (La.1/21/05), 893 So.2d 55; and does not prevent restrictions on a person's driving license privileges.
 
 Dear v. State,
 
 28,852 (La.App. 2 Cir. 10/30/96), 682 So.2d 862.
 

 [11]
 

 . The other time the effect of the automatic pardon was mentioned by the majority was discussing the legislative history of art. 1, § 10 in order to determine whether the governor was authorized to issue a pardon for federal convictions. In that discussion, the majority quoted a statement "concerning at least one Louisiana legislator's understanding of the amendments" in which Representative Bruneau stated "because there is virtually an automatic pardon for first offenders under the constitution, the bill basically refers to second offenders and allows them to run after 15 years." 937 So.2d at 353. Not only was this statement dicta, the understanding of
 
 one
 
 Louisiana legislator is clearly insufficient to affect our views here. Ultimately, it is the language of the constitution which prevails.
 

 [12]
 

 . No application for rehearing of a decision of this Court in a case involving an objection to candidacy shall be entertained. La. Sup. Ct. Rule X, § 5(c).
 
 See also
 
 La. R.S. 18:1409(1).