# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 19-28

NEIL S. KAVANAGH

VERSUS

ROY EUGENE HEBRON

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 263,744
HONORABLE MONIQUE FREEMAN RAULS, DISTRICT JUDGE

**********

## PER CURIAM

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Elizabeth A. Pickett and Phyllis M. Keaty, Judges.

**AFFIRMED.**

**Charles David Elliott**
**Charles Elliott & Associates**
**720 Murray Street**
**Alexandria, LA 71301**
**(318) 704-6511**
**COUNSEL FOR DEFENDANT APPELLANT:**
    **Roy Eugene Hebron**

**B. Gene Taylor, III**
**Attorney at Law**
**P. O. Box 6118**
**Alexandria, LA 71307-6118**
**(318) 445-6471**
**COUNSEL FOR PLAINTIFF APPELLEE:**
    **Neil S. Kavanagh**

**PER CURIAM.**

The defendant, Roy Eugene Hebron (Hebron), appeals the trial court's judgment in favor of the plaintiff, Neil S. Kavanagh (Kavanagh), on his request for injunctive relief regarding whether Hebron could take or hold public office under newly enacted La.Const. art. 1, § 10.1 with a felony conviction in 2011 and a sentence ending in December 2017. Finding no legal error or abuse of discretion on the part of the trial court, we affirm the judgment.

## I.

### ISSUES

We must decide:

(1) whether the trial court erred in applying La.Const. art. 1, § 10.1; and

(2) whether the trial court abused its discretion in granting the injunction requested by Kavanagh to prevent Hebron from taking and holding public office in January 2019.

## II.

### FACTS AND PROCEDURAL HISTORY

Kavanaugh, Mayor of Ball, Louisiana, along with Hebron and Gene Decker, were opposing candidates in the November 6, 2018 mayoral election in Ball. Hebron won the election with 56% of the 1450 votes cast, and Kavanagh came in second. Also on November 6, 2018, Louisiana citizens voted statewide to approve a new constitutional amendment, La. Const. art. 1, § 10.1, which prohibits a convicted felon from holding public office until more than five years have elapsed since the completion of his sentence. The amendment was approved with

over a million Louisiana citizens voting in favor of its enactment into law. In Ball, Louisiana, the amendment passed with 60% of the electorate voting it into law. Pursuant to La.Const. art 13, § 1(C), the effective date of the new constitutional amendment was twenty days after the Governor proclaimed it law, which occurred in this case on November 21, 2018. The parties stipulated that the effective date of La. Const. art. 1, § 10.1, was December 12, 2018. Kavanagh filed suit against Hebron on December 17, 2018, seeking a declaratory judgment and an injunction to prevent Hebron from taking or holding office in January 2019.

The trial court heard the matter on December 21, 2018. The record reveals that in 2011, while Hebron was the sitting Mayor of Ball, he was convicted of conspiracy to defraud The Federal Emergency Management Agency (FEMA) in the town's application for disaster relief funds. Hebron served four years in prison and three years of probation, all of which were completed on December 18, 2017. Thus, when the new law became effective on December 12, 2018, less than one year had elapsed since the completion of Hebron's sentence for the felony conviction.

At the end of the hearing on December 21, 2018, the trial judge found that the new amendment, La.Const. art. 1, § 10.1, applied to Hebron. She indicated that proceedings for a declaratory judgment would be held separately at a later time. The trial court then signed a judgment in open court granting Kavanagh's injunction to prevent Hebron from taking and holding public office in January 2019. The December 21, 2018 judgment also denied Hebron's motion to strike and his exceptions of prematurity, no cause of action, no right of action, improper cumulation of actions, non-joinder of parties, and unauthorized use of summary proceedings. The trial court's judgment also ordered Kavanagh to remain in office

2

as mayor, pursuant to La.R.S. 42:2, until further order of the court and/or further proceedings in accordance with law. While Kavanagh and the trial court agreed that this suit did not fall under the Election Code,[1] Hebron's appeal requested an expedited hearing, which we granted. For the following reasons, we affirm the judgment of the trial court.

### III.

### STANDARDS OF REVIEW

An appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. *Stobart v. State, through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). "A trial court's determination as to whether to issue a preliminary injunctionis subject to the abuse of discretion standard of review." *Ryan v. Calcasieu Par. Police Jury*, 17-16, p. 4 (La.App. 3 Cir. 9/26/18), 256 So.3d 1044, 1048 (quoting *Mount Zion Missionary Baptist Church v. Jones*, 11-961, p. 4 (La.App. 3 Cir. 2/1/12), 84 So.3d 674, 678.) "Questions of law involving the correct interpretation of legislation are reviewed de novo, without deference to the legal conclusions of the trial court." *State v. Merrill*, 14-530, p. 4 (La.App. 3 Cir. 6/11/14), 140 So.3d 1237, 1239 *writ denied,* 14-1227 (La. 9/19/14), 149 So.3d 249 (citing *Durio v. Horace Mann Ins. Co.,* 11–0084 (La. 10/25/11), 74 So.3d 1159).

---

[1] Kavanagh's petition did not invoke the Election Code articles in Title 18, and he asserted at trial that he did not object to Hebron's candidacy in July 2018 because the constitutional amendment was not in law at that time to prohibit Hebron from qualifying to run. *See, e.g.*, La.R.S. 18:491–93 addressing candidacy. Kavanagh further stated that he was not asserting fraud or irregularities in the conduct of the election held in November 2018. *See, e.g.*, La.R.S. 18:1401–06 on contesting an election. Neither the trial court nor the parties have treated their filings as submissions under the Election Code; nor does this court.

*Louisiana Constitution Article 1, Section 10.1*

Louisiana Constitution Article I § 10.1, entitled, Disqualification from Seeking or Holding an Elective Office or Appointment, was added by Acts 2018, No. 719, § 1. It provides (emphasis added):

(A) Disqualification. The following persons shall not be permitted to *qualify* as a candidate for elective public office *or hold* elective public office or appointment of honor, trust, or profit in this state:

(1) A person actually under an order of imprisonment for conviction of a felony.

(2) A person who has been convicted within this state of a felony and who has exhausted all legal remedies, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of *a crime which, if committed in this state, would be a felony* and who has exhausted all legal remedies and has not afterwards been pardoned either by the governor of this state or by the officer of the state, nation, government, or country having such authority to pardon in the place where the person was convicted and sentenced.

(B) Exception. The provisions of Paragraph (A) of this Section shall not prohibit a person convicted of a felony from *qualifying* as a candidate for elective public office *or holding* such elective public office or appointment of honor, trust, or profit *if more than five years have elapsed* since the completion of his original sentence for the conviction.

(C) The provisions of Paragraph (A) of this Section shall not prohibit a person from being employed by the state or a political subdivision.

The Historical and Statutory notes state:

Constitution Art. 13, § 1(C) provides in part, "If a majority of the electors voting on the proposed constitutional amendment approve it, the governor shall

4

proclaim its adoption, and it shall become part of this constitution, effective twenty days after the proclamation..."

Hebron contends that La.Const. art 1, § 10.1(A)(2) requires that the same felony conviction for the federal FEMA violations must also be prosecutable as a felony in Louisiana. He not only asserts that Louisiana must have a statute making it a state crime to violate the FEMA statutes, he also asserts that the state statute must have the exact same elements as the FEMA statute. We disagree. The amendment contains no such language nor the standard asserted by Hebron. More specifically, La.Const. art. 1, § 10.1(A)(2) states that the crime must be "a crime which, if committed in this state, would be a felony." The new amendment is almost identical in language to its predecessor, La.Const. art. 1, § 10, entitled "Right to Vote; Disqualification from Seeking or Holding an Elective Office," which otherwise provided a longer waiting period for convicted felons, as follows (emphasis added):

> (A) Right to Vote. Every citizen of the state, upon reaching eighteen years of age, shall have the right to register and vote, except that this right may be suspended while a person is interdicted and judicially declared mentally incompetent or is under an order of imprisonment for conviction of a felony.
>
> (B) Disqualification. The following persons shall not be permitted *to qualify* as a candidate for elective public office *or take* public elective office or appointment of honor, trust, or profit in this state:
>
> (1) A person who has been convicted within this state of a felony and who has exhausted all legal remedies, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of *a crime which, if committed in this state, would be a felony* and who has exhausted all legal remedies and has not afterwards been pardoned either by the governor of this state or by the officer of the state, nation, government or country having such

5

authority to pardon in the place where the person was convicted and sentenced.

(2) A person actually under an order of imprisonment for conviction of a felony.

(C) Exception. Notwithstanding the provisions of Paragraph (B) of this Section, a person who desires to *qualify* as a candidate for *or hold* an elective office, who has been convicted of a felony and who has served his sentence, but has not been pardoned for such felony, shall be permitted to qualify as a candidate for or hold such office if the date of his qualifying for such office is more than *fifteen* years after the date of the completion of his original sentence.

The predecessor amendment was effective from 1998 until 2016, when it was declared null and void because the procedures for amending the constitution in 1997-98 had not been followed. *Shepherd v. Schedler*, 15-1750 (La. 1/27/16), 209 So.3d 752, *on reh'g* (May 2, 2016).

During the effective period of La.Const. art. 1, § 10, the Louisiana Supreme Court heard the contention at issue in this case in *Touchet v. Broussard*, 10-380 (La. 3/3/10), 31 So. 3d 986. There, Touchet, a qualified elector of Abbeville, filed a petition under La.Const. art. 1, § 10, challenging the candidacy of Broussard for a city council position and asserting that Broussard had a felony conviction for aiding and abetting an illegal gambling business in violation of 18 U.S.C. §§ 1955(a) and (2). Touchet further asserted that Broussard had not been pardoned by the governor, nor had fifteen years passed since his federal conviction. The trial court found that in Broussard's federal plea agreement he had admitted guilt to the Louisiana felony offense of gambling as defined in La.R.S. 14:90, but a panel of this court of appeal reversed, finding that the Louisiana statute was not equivalent to the federal statute. Overturning the third circuit, the supreme court stated:

> The court of appeal concluded that "Louisiana law does not contain an aiding and abetting statute comparable to the federal statute, and Mr. Touchet has pointed the court to no comparable Louisiana felony." *Id.* However, the court of appeal's ruling ignores a basic principle of Louisiana statutory criminal law that all persons who aid and abet in the commission of a crime are principals. *See* La. R.S. 14:24 ("All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals"). Thus, it is unnecessary for La. R.S. 14:90, or any other criminal statute, to additionally contain any aiding or abetting provisions as those actors are already considered principals to the crime.

*Id.* at 991.

In the present case, Hebron pled guilty to count 1 of the indictment against himself and four others for Conspiracy under 18 U.S.C. § 371 to defraud FEMA of disaster relief funds following Hurricane Gustav in 2008. Counts 2 and 3 were dismissed pursuant to the plea agreement, dated February 5, 2011, which required Hebron to appear in open court, plead guilty to count 1 of the indictment, and resign his position as Mayor of Ball, Louisiana.

The federal conspiracy statute, 18 U.S.C. 371, states as follows:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

Count 1 of the indictment states that the defendants "did knowingly and willfully combine, conspire, confederate and agree together to commit offenses against the United States" in violation of 18 U.S.C. § 1040 "by knowingly and fraudulently making materially false, fictitious, and fraudulent statements and

representations to FEMA in an application for benefits authorized, transmitted, transferred, disbursed and paid with FEMA funds . . . ." Count 1 further states that the object of the conspiracy was to defraud FEMA and for the defendants to unlawfully enrich themselves. The manner and means used by the defendants were overstating the hours worked and overstating the usage of Ball vehicles and equipment during the emergency response to Gustav. One of the overt acts, among others, was attending a meeting of Ball employees and knowingly signing false timesheets for submission to FEMA for reimbursement.[2]

In Louisiana, the criminal conspiracy statute, La.R.S. 14:26 (emphasis added), provides:

> A. Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing *any crime*; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.
>
> B. If the intended basic crime has been consummated, the conspirators may be tried for either the conspiracy or the completed offense, and a conviction for one shall not bar prosecution for the other.
>
> C. Whoever is a party to a criminal conspiracy to commit any crime shall be fined or imprisoned, or both, in the same manner as for the offense contemplated by the conspirators; provided, however, whoever is a party to a criminal conspiracy to commit a crime punishable by death or life imprisonment shall be imprisoned at hard labor for not more than thirty years.

---

[2] In the opinion from the United States Fifth Circuit in *United States v. Hebron*, 11-30513 (5th Cir. 2012), 684 F.3d 554, wherein Hebron appealed his sentence, the court affirmed, finding that the district court did not err in accepting an intended loss calculation of $320,000 from FEMA for reimbursement requests following Hurricane Rita in 2005 and Hurricane Gustav in 2008, though it agreed to provable fraud of less than $200,000 in the plea agreement. The FEMA claim also involved billing FEMA almost $10,000 for dumpsters following Hurricane Gustav while at the same time seeking and receiving reimbursement from Keep Louisiana Beautiful, Inc., a non-profit organization, for the same dumpsters.

D. Whoever is a party to a criminal conspiracy to commit any other crime shall be fined or imprisoned, or both, in the same manner as for the offense contemplated by the conspirators; but such fine or imprisonment shall not exceed one-half of the largest fine, or one-half the longest term of imprisonment prescribed for such offense, or both.

In addition to the criminal conspiracy statute, La.R.S. 14:26, Louisiana has a government benefits fraud statute, La.R.S. 14:70.9, which states:

A. The crime of government benefits fraud is the act of any person who, with intent to defraud the state or any person or entity through any government benefits administered by any state department, agency, or political subdivision, does any of the following:

(1) Presents for allowance or payment any false or fraudulent claim for furnishing services, merchandise, or payments.

(2) Knowingly submits false information for the purpose of obtaining greater compensation than that to which he is legally entitled for furnishing services, merchandise, or payments.

(3) Knowingly submits false information for the purpose of obtaining authorization for furnishing services, merchandise, or payments.

(4) Knowingly makes or causes to be made a false statement or representation of material fact on an application or form for assistance, goods, services, or payments when the false statement or representation is made for the purpose of determining the person's eligibility to receive benefits or payments.

(5) Knowingly conceals or fails to disclose any material fact affecting the applicant's or recipient's initial or continued eligibility to receive benefits or payments.

B. Whoever commits the crime of government benefits fraud shall be imprisoned, with or without hard labor, for not more than five years, may be fined not more than ten thousand dollars, or both imprisoned and fined.

C. For the purpose of this Section, government benefits include any record, voucher, payment, money or thing of value, good, service, right, or privilege provided or administered by a state government entity.

9

Louisiana Revised Statutes 14:70.9 was enacted in 2018. But well before the enactment of La.R.S. 14:70.9, the theft of government benefits was a crime under the very broad theft statute pertaining to thefts without violence, La.R.S. 14:67. *See State v. Judeh*, 08-519 (La.App. 5 Cir. 11/12/08), 2 So.3d 434, where the defendant was convicted of theft by fraudulent conduct for falsifying her job status and income on an application for benefits from the Office of Family Support, thereby receiving benefits from the State to which she was not entitled. The theft statute broadly applies to many forms of theft, including fraudulent invoicing, billing, and collection of money for items and labor not performed. *See State v. Hampton*, 27,703 (La.App. 2 Cir. 2/28/96), 670 So.2d 1349, *writ denied*, 96-1063 (La. 11/15/96), 682 So.2d 758.

Louisiana Revised Statutes 14:67 (emphasis added) provides in pertinent part:

> A. Theft is the *misappropriation or taking of anything of value* which belongs to another, either without the consent of the other to the misappropriation or taking, or *by means of fraudulent conduct, practices, or representations.* An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
>
> B. (1) Whoever commits the crime of theft when the misappropriation or taking amounts to a value of twenty-five thousand dollars or more shall be imprisoned at hard labor for not more than twenty years, or may be fined not more than fifty thousand dollars, or both.
>
> . . . .
>
> C. When there has been a misappropriation or taking by a number of distinct acts of the offender, the aggregate of the amount of the misappropriations or taking shall determine the grade of the offense.
>
> . . . .

Pursuant to La. R.S. 14:2(A)(4), a felony in Louisiana is any crime for which an offender may be sentenced to imprisonment at hard labor. Thus, it is disingenuous to contend that the fraud perpetrated upon FEMA by Hebron would not be a felony if perpetrated upon the State of Louisiana in an application for government benefits. In addition to serving the four-year imprisonment and three-year probationary terms, Hebron was required to pay $25,000 in fines and $105,556 in restitution in connection with the federal offenses. He was also required to resign his position as mayor. He did not complete serving his probationary period until December 18, 2017, less than one year from the effective date of La.Const. art. 1, § 10.1, on December 12, 2018, and slightly over one year from the date in January 2019 that Hebron would be required to assume and hold the office of mayor, well under the five-year limitation established by the new amendment. Therefore, under La.Const. art. 1, § 10.1, Hebron was prohibited from assuming and holding the office of Mayor of Ball in January 2019, and the trial court did not err in so finding.

### *Injunctive Relief and Standing*

Hebron contends that the Election Code in Title 18 provides detailed procedures for elections and for contesting elections, but that it contains no provision allowing for an injunction against a successful candidate to prevent that candidate from taking office. Therefore, Hebron contends, Kavanagh did not have standing or a right of action to bring the suit. Kavanagh asserts and has always asserted that his request for an injunction does not fall under the Election Code. He correctly points out that the Election Code provides registered voters with time-sensitive procedures for challenging a candidate's qualifications to run, and for

11

contesting the election after the fact due to fraud or irregularity in the conduct of the election. *See* La.R.S. 18:491–93, and La.R.S. 18:1401–06, respectively. But as repeatedly asserted by Kavanagh, the Election Code does not provide the basis for his suit, as the constitutional amendment at issue did not become effective until December 12, 2018, and did not bar Hebron from qualifying to run back in July 2018. Nor did Kavanagh bring suit to challenge the election for fraud or irregularity in the election process.

Rather, Kavanagh, a registered voter, citizen, and current Mayor of Ball, sought a preliminary injunction on December 17, 2018, to restrain Hebron from illegally holding office in January 2019, and to prevent infringement on Kavanagh's statutory duty to continue to discharge the duties of his office until a lawful successor was inducted into that office. *See* La.R.S. 42:2.

The Code of Civil Procedure states, "An injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law. . . ." La.Code Civ.P. art. 3601(A). However:

> A petitioner is entitled to injunctive relief without the requisite showing of irreparable injury when the conduct sought to be restrained is unconstitutional or unlawful, *i.e.,* when the conduct sought to be enjoined constitutes a direct violation of a prohibitory law and/or a violation of a constitutional right. Once a plaintiff has made a *prima facie* showing that the conduct to be enjoined is reprobated by law, the petitioner is entitled to injunctive relief without the necessity of showing that no other adequate legal remedy exists.

*Jurisich v. Jenkins*, 99-76, p. 4 (La. 10/19/99), 749 So.2d 597, 599 (citations omitted).

12

In spite of the above law, and in furtherance of his argument that the *Election Code* provides no remedy for Kavanagh to seek an injunction, and he therefore has no remedy, Hebron points to *State v. Gibson*, 12-1145 (La. 1/29/13), 107 So.3d 574, a case decided during the effective period of the predecessor amendment, La.Const. art. 1, § 10. There, where the State brought suit against a convicted felon after the election but before he was sworn into office, the Louisiana Supreme Court stated:

> The prohibition contained in Art. I, § 10 is two-fold. Article I, § 10 not only sets forth qualifications for office by prohibiting a felon from qualifying for public office unless certain conditions are met, but it goes further by expressly prohibiting such a felon from taking office. Although the provisions of the Election Code do not directly provide a method or cause of action for the State to prevent Mr. Gibson from taking office in violation of Art. I, § 10, we find the State can bring a direct action pursuant to that constitutional provision. A cause of action arises when Art. I, § 10 is violated because the constitutional prohibition contained therein is self-executing. A constitutional provision is self-executing when it can be given effect without the aid of legislation, and there is nothing to indicate that legislation is intended to make it operative.

*Gibson*, 107 So.3d at 581-82.

After analyzing numerous statutes in the Election Code, the *Gibson* court found that it provided no remedy for the State to bring suit under La.Const. art. 1, § 10 after a certain time frame, but that the State was not confined to traditional challenges under the Election Code. One of the statutes analyzed by the Court in *Gibson*, was La.R.S. 18:495. Paragraph (A) of La. R.S. 18:495 gave the State standing to immediately bring suit under La.Const. art. 1, § 10, if it learned that a convicted felon filed a notice of candidacy, but Paragraph (B) of La.R.S. 18:495 required the State to file suit within the seven-day period after the close of

13

the qualifying period. Thus, the ruling in *Gibson* was that the State was not bound by the Election Code in enforcing a constitutional amendment. Similarly, Paragraph (D) of La.R.S. 18:495 gives standing to registered voters to bring suit under the same constitutional amendment, again couching it in terms of candidacy. Similar to *Gibson*, there must be a remedy outside the Election Code for citizens to protect their interests in the face of constitutional violations. While Hebron characterizes the holding in *Gibson* as applying only to the State's plenary power, *Gibson* does not make that power exclusive to the State, nor does it foreclose a right of action by a voter to seek injunctive relief in the face of a violation of La.Const. art. 1, § 10.1 in this case.

Here, the constitutional amendment which became effective on December 12, 2018, prohibits a person with a past felony conviction from holding public office until more than five years have elapsed from the date he completed his sentence. Hebron completed his sentence on December 18, 2017, thus he would not be able to lawfully hold the office when required to do so in January 2019.[3] Because we find that Kavanagh made a *prima facie* showing under *Jurisich*, 749 So.2d 597, that Hebron's taking the oath of public office and holding the position of mayor in January 2019 is unconstitutional and reprobated by law under La.Const. art. 1, § 10.1, we find no abuse of discretion in the trial court's granting of injunctive relief.

---

[3] We further note that under the constitutional amendment now in effect, Hebron will not be able to *qualify to run* for public office until December 19, 2022.

14

## V.

## <u>CONCLUSION</u>

Based upon the foregoing, the trial court's judgment is affirmed. Costs of this appeal are assessed against the defendant, Roy Eugene Hebron.

**AFFIRMED.**